Powell et al. *v.* The City of Madison et al.

---

Powell *et al. v.* The City of Madison *et al.*

City of Madison—Taxation.—Under the charter of the city of *Madison,* pork, owned by non-residents of the city, which had been brought to said city by them, to be slaughtered, cured and stored there, subject to their order, will be liable to municipal taxation whilst it remains in said city, and it will be the duty of the person,

in whose possession it is, to furnish a list thereof for taxation in his name.

SAME.—Under the provisions of said charter, where a person is called upon by the assessor to furnish such list, and he prepares and delivers it to the officer, but the officer, whose duty it is to swear him thereto, neglects to do so, such oath will be thereby waived, and the officer will have no right himself to make such list, on the ground that such person had either neglected or refused so to do, nor, in any such case, would the common council of said city have any authority to order that additional property be placed upon said list; but such list, when deemed imperfect or dishonest, should be corrected in the mode prescribed in section 10 of the amendments to said charter.

TAXATION OF PERSONALTY.—Personal property, which exists in a substantial and corporal form, such as cured pork, &c., must have an actual *situs*, and is taxable wherever that *situs* is; but it seems that personal property of an intangible character, which exists in rights of action, such as debts, bank stocks, &c., has no *situs*, other than the domicil of the owner, and is therefore only taxable at the place of his residence.

TAXATION—CONSTRUCTION.—The provisions of a municipal charter, in reference to the mode of assessing and collecting taxes, must be substantially pursued, or the tax will be invalid, and can not be legally collected.

APPEAL from the *Jefferson* Circuit Court.

WORDEN, J.—Complaint by the appellants against the appellees, to restrain the collection of certain taxes. Demurrer to the complaint sustained, and judgment for the defendants.

The following is the case made by the complaint:

The plaintiffs, who were partners, were possessed of a pork house, at the city of *Madison*, and carried on the business of slaughtering hogs, and packing and curing the meat thereof, both for themselves and for others. During the winter of 1861 and 1862, they slaughtered, packed and cured the meat of hogs for other persons, who did not reside in the city of

Powell et al. *v.* The City of Madison et al.

*Madison,* the meat being the property of the persons for whom the hogs were thus slaughtered, and held by the plaintiffs, subject to the order of said persons, to be delivered to them, or shipped to their order. At the time of assessing taxes for the year 1862, viz: in *May* of that year, the plaintiffs had in their possession, at their pork house, a large amount of the meat thus slaughtered, packed, &c., for others, amounting in value to over 55,000 dollars. In the month of *May,* 1862, the city assessor called upon the plaintiff, *Powell,* to furnish a list of the taxable property of the plaintiffs for that year, for the purpose of entering the same on the assessment roll. *Powell* furnished the assessor with a list of the real estate owned by the firm, and also personal property to the amount of 40,000 dollars, not including the pork above mentioned. The assessor received said list from *Powell* as and for the plaintiffs' list of taxables for said year, without requiring him to swear to the same, and it is averred that said list was substantially true and fair. Afterwards, the assessor, without the knowledge or consent of the plaintiffs, assessed them with the further sum of 60,000 dollars of personal property, making in all, for personal property, 100,000 dollars. After the plaintiffs had ascertained that the assessor had thus assessed them with the amount of 100,000 dollars of personal property, *Powell* went before a committee, appointed by the Common Council, for the purpose of correcting erroneous assessments, &c., and made out, under oath, a list of the personal property belonging to the plaintiffs, varying but slightly from that furnished to the assessor, as before stated, and not including the meat above mentioned. But the Common Council caused the duplicate assessment roll to be made out and delivered to *Wilson,* the collector, for collection, charging the plaintiffs with a tax on the 100,000 dollars of personal property. The collector has seized property, and is about to sell, to make the amount of taxes charged.

It is, perhaps, but just to assume, that the 60,000 dollars assessed to the plaintiffs, in addition to the list furnished by *Powell* to the assessor, was assessed as the estimated value of the pork above mentioned; hence, three questions seem to arise on the facts stated, viz:

1. Was the pork taxable by the city?

2. If so, was it taxable to the plaintiffs?

3. Was the assessment properly made, so as to make the tax legally collectable?

Whether or not the pork was taxable by the city depends upon the powers conferred upon her by her charter. The charter of the city may be found in the local laws of 1848, p. 89, and an amendment in the local laws of 1849, p. 286. The 9th and 10th sections of the amendment are as follows:

"Sec. 9. That the assessor or collector, as the case may be, shall receive lists of taxable property from the persons owning the same, as directed in the 23d and 33d [sections] of the act to which this is an amendment, which bill shall set forth the real estate owned in the city by its number or other description, and value thereof, stocks, or interests in banks, railroads, steamboats, insurance offices, or other stocks absolutely paid for, or the amount paid thereon. The value of goods and produce not for export or in transit, owned or in possession of any inhabitants of the city, and the value of all ordinary personal property, together with money at interest, as also dogs, bitches, hogs, and other property named in the act of incorporation, all of which shall be subject to taxation by the order of the Common Council; and such owner of such property, money, or effects, or the agent thereof, shall sign his or her name to such list, and swear or affirm that it is a just and true list of all the property which they understand to be taxable for city purposes, and that the value put thereon is a fair and proper value to the best of their knowl-

edge and belief, which list shall be certified by the assessor or collector, as aforesaid.

"Sec. 10. That if the list so furnished by the owner or possessor of such property as aforesaid, shall not be a true list of such person's property, or shall not have a fair value placed thereon, and such person shall be adjudged by the Mayor to have committed a fraud in thus delivering his list of taxable property, or by placing too low a value thereon, such person shall be fined double the amount of what the additional tax would have been if a fair list or value had been given, which fine shall be paid [into] the city treasury, as other fines are, or if it is adjudged that no fraud has been committed, but [that] it was an honest mistake in judgment, then the Mayor shall adjudge that the additional property or value be placed on the tax-roll, which shall be done accordingly: *Provided,* That [if] the Common Council shall not, in their order, specify a portion of the articles above enumerated as subjects of taxation, then such portion as may not be named by their class in such order, need not be put in a list as aforesaid."

It will be seen by section nine of the amendment above set out that the city is authorized to levy and collect a tax upon "the value of goods and produce not for export or in transit, owned or in possession of any inhabitants of the city."

That the pork in question was not exempt from taxation by reason of any supposition that it came within the terms "for export or in transit," is settled by the case of *The City of Madison* v. *Fitch*, 18 Ind. 33.

The pork was owned by persons who were not inhabitants of the city, but was in the possession of the plaintiffs, who were such inhabitants. The pork being within the city, and thus in the possession of the plaintiffs, it comes within the terms of the statute and is subject to taxation, unless we adopt the fiction and apply it to the case, that the *situs* of personal

property is the domicil of the owner. It may be true that for the purposes of taxation, the *situs* of such property as debts, corporation stocks and such intangibilities, may be regarded as the domicil of the owner. *The City of Evansville* v. *Hall,* 14 Ind. 27. But it does not follow that such is the rule in reference to property that has tangible corporeal qualities and must have an actual location. Property that has the substantial qualities of cured pork must have an actual *situs;* and we think both on principal and authority it may be taxed wherever found, without reference to the domicil of the owner. This subject underwent a very full examination in the case of *Hoyt* v. *The Commissioners of Taxes,* 23 N. Y. 224, and the decision there fully sustains the views above expressed.

But it is urged that, as the property was only in the city and in possession of the plaintiffs for a temporary purpose, it does not come within the law providing for taxation. It may be true that in many cases, as for instance, if any engine owned by a person residing elsewhere, should be sent into the city for repairs, or if a horse should be left by a farmer with a farrier in the city to be treated, a mere temporary possession by a person within the city, would not be regarded as a possession within the meaning of the law on the subject of taxation.

But, where the possession is of so permanent a character, and for so material a purpose as is involved in the slaughtering of hogs, salting and curing the meat, and holding the same until the owners order it shipped, or require a delivery to them, such possession, it seems to us, comes within the spirit and meaning of the law. We conclude that the property was taxable.

Was it taxable to the plaintiffs? The charter does not authorize the taxation of personal property owned by persons not inhabitants of the city, unless it is in the possession of an inhabitant, from which the inference may be drawn that it is

to be assessed to the inhabitant having such possession. But this is not left to mere inference. The tenth section of the amendment speaks of the list "furnished by the owner or possessor of such property," &c. The entire provisions of the charter seem to contemplate that personal property in the possession of an inhabitant of the city should be assessed to him.

We come to the third question. Was the property properly assessed? This question, we infer, was not discussed below, as the counsel for the appellees has not noticed it in his brief, but it fairly arises in the record, and is relied upon by the appellants.

We think it safe to assume that the provision of the charter in relation to the mode of assessing and collecting taxes must be substantially pursued; otherwise. the taxes can not be legally collected.

By the 16th section of the amendment to the charter, it is provided: "That in all cases when any person may refuse or neglect to furnish the list of taxable property as above required, or shall refuse to swear to the same, the assessor shall make out a list from the best information he can get, and shall also fix a valuation on the same to the best of his judgment." In the case before us, the plaintiffs did make out a list, which, although not sworn to, was received by the assessor as the list of property of the plaintiffs. The assessor had no right to make out a list on the ground that the plaintiffs had failed or neglected to do so. Nor had the assessor any right to make out such list on the ground that the plaintiffs had refused to swear to the same. When *Powell* furnished him with the list, he might and should have required him to swear to it. He was authorized to administer to him the oath. City Charter, section 23. By receiving the list from *Powell* without requiring it to be sworn to, he could not place the plaintiffs in the position of having refused to take the oath.

We see no ground on which it can be claimed that the assessor had a right to make out the list and fix the valuation thereon.

Nor do we think the common council had any authority to order that the additional property be placed on the assessment roll.

By the 23d section of the charter, it was provided that the assessor should take from persons owning property, real or personal, a list of the same, with its fair valuation, "which valuation shall be final and conclusive for the purpose of levying taxes thereon by said city." Upon the failure or refusal of any person to furnish said list, &c., the assessor was required to search out the property and value the same, which valuation and asssessment was also to be final and conclusive, except as to absentees and non-residents, who might apply to the common council for the correction of any such assessment, and the common council were authorized to do what to them might seem right in the premises. This is all the provision we find in the charter which authorizes the common council to regulate or correct assessments. Now, supposing the foregoing provision, in reference to the power of the common council, not to be repealed or modified by sections 9 and 10 of the amendment hereinbefore quoted, still the case before us does not come within the provision. We have seen, that the list and valuation furnished by the tax payer was to be conclusive for the purpose of taxation. That made by the assessor against absentees and non-residents might be changed upon their application to the common council. But the assessor had no right to make such list and valuation unless the persons to be taxed failed or refused to make the same; so that in the case before us, the common council had nothing to do in the premises.

The mode of proceeding, where the list furnished is not a true list, or where the value placed thereon is not fair, is fully

Powell et al. *v.* The City of Madison et al.

provided for by section 10 of the amendment. If the party furnishing the list has been guilty of a fraud, he is to be fined by the Mayor; "or, if it be adjudged that no fraud has been committed, but that it was an honest mistake in judgment, then the Mayor shall adjudge that the additional property, or value, be placed on the tax roll, which shall be done accordingly," &c.

Here there has been no adjudication by the Mayor; the mode prescribed by the statute for correcting the list has not been complied with, and the taxes on the additional 60,000 dollars worth of property can not be legally collected, because it has not been assessed in a legal manner.

It should, perhaps, be observed, before leaving the subject, that the 33d section of the charter authorizes the collector, where the assessor has failed to call for a list of taxable property, to call upon the tax payer for such list, and, upon his failure to furnish it, to make out such list in the same manner as the assessor is required to do. But the assessment in this case was not made by the collector, nor was it a case in which he was authorized to make it.

We are of opinion that, on the case made, the plaintiffs were entitled to restrain the city and her collector from the collection of the tax on the 60,000 dollars worth of property thus added to the list furnished by them to the assessor, because the same had not been assessed or placed upon the tax roll in the manner prescribed by the charter; and hence that the demurrer should have been overruled.

*Per Curiam.*—The judgment below is reversed, with costs, and the cause remanded.

*C. E. Walker,* for the appellants.

*H. W. Harrington* and *R. J. Bright,* for the appellees.