*J. P. Siddall,* for appellants.

*W. A. Bickle,* for appellees.

----------------------◈------------------

RIEMAN and Another *v.* SHEPARD, Treasurer of Vigo County, and Another.

TAXES.—SITUS OF PERSONAL PROPERTY.—Where a person engaged in the provision trade in another State, where he has his domicil, purchases, slaughters and packs hogs in this State, for shipment to the place of his domicil, to be sold in the usual course of his business there, such property is subject to taxation in this State.

SAME.—DUTY OF AGENT TO LIST PROPERTY.—Under section 10 of the act for the assessment of taxes, (1 G. & H. 70,) it is the duty of an agent to list for taxation the property of his principal in his custody, and in the event of his failure to do so, the property is properly assessed to him.

AFFIDAVIT TO RELEASE PROPERTY.—An affidavit filed in support of an application to a county auditor to release property from taxation, under section 92 of the act for the assessment of taxes, (1 G. & H. 97,) upon the ground that a tax had already been paid in another State, stated that no specific taxation was made upon the property in the State where the tax was alleged to have been paid, but that the assessment and taxation there "was intended and understood to cover and include" the whole business of the applicant, and that the taxes had been paid.

*Held,* that the affidavit did not sufficiently show that a tax had been paid upon the property in another State.

ASSESSMENT BY COUNTY TREASURER.—Under the act of *March* 3, 1859, (1 G. & H. 74,) it is the duty of the county treasurer to assess for taxation

property which has been omitted by the assessors; but where an assessment made by the county auditor was acted upon and adopted by the treasurer, it was held sufficient.

APPEAL from the *Vigo* Common Pleas.

RAY, C. J.—The appellants filed their complaint in the *Vigo* Common Pleas, alleging, substantially, that they were, and had been for several years, provision dealers in and residents of *Baltimore, Maryland*, and doing their entire business there, except so far as afterwards stated; that their capital and personal property, including stock in trade, merchandise, provisions, produce and money were assessed for taxation in the said city of *Baltimore*, and State of *Maryland*, for the years 1864 and 1865, under the generic name of personal property, and that such taxes had been paid; that as such provision dealers, they have a packing house in *Terre Haute, Indiana*, and are in the habit, during *December, January* and *February* of each year, of purchasing, slaughtering and packing hogs, at the said packing house, for shipment from *Indiana*, and sale in their business at *Baltimore;* that in *December*, 1864, they bought and slaughtered at *Terre Haute*, for their said trade in *Baltimore*, $57,380 worth of hogs, of which $37,480 worth were bought in and brought from *Illinois;* that said money was procured from their said house in *Baltimore*, and was taxed as aforesaid; that during *December, January* and *February* of 1864 and 1865, they packed their said hogs at *Terre Haute*, and shipped them from *Indiana* and sold them in 1865, in the prosecution of their said business, in *Baltimore;* that the value of said hogs did not exceed $57,380; that at the same time, at *Terre Haute*, they bought and packed for *Henry Rieman & Son*, resident provision dealers of *Baltimore*, with money received from them, $25,000 worth of hogs, for their said business in *Baltimore*, and shipped the hogs so packed to said *Henry Rieman & Son*, at *Baltimore*, where they were sold in 1865, in the prosecution of their said business; that the capital and personal property of *Henry Rieman & Son*, including their stock in trade, merchandise, provisions, produce and money,

were assessed for taxation in *Baltimore,* for 1864 and 1865, under the generic name of personal property, and that the taxes were fully paid; that the value of said hogs did not exceed $25,000; that the above named was all the personal property either owned or held by plaintiffs in the State of *Indiana* in 1865; that no specific taxation was made upon the said hogs in the State of *Maryland,* but the said assessment and taxation were intended and understood to cover and include the entire business in *Baltimore* of plaintiffs and of *Henry Rieman & Son,* and the produce and provisions there held, owned or sold by them in 1865; that no part of said hogs were sold or intended to be sold in *Indiana,* except the offal, amounting to $800, and some small sales to a few friends, amounting to $500; that at the *June* term, 1865, of the board of equalization for said county of *Vigo,* the township assessor reported that there was a large amount of pork on hand at the packing house of plaintiffs on the first of *January,* 1865, whereupon the board verbally directed the said auditor to ascertain the facts, and to make the assessment, and the auditor afterwards, having ascertained the facts, did, in *June,* 1865, without the knowledge of or notice to plaintiffs, assess them with personal property valued at $84,485, and extended thereon, on the tax duplicate of *Vigo* county, the state and county taxes at $1,453 14, plaintiffs being then out of the State; that said auditor intended to assess thereby the said hogs so packed, shipped and sold at *Baltimore.* Plaintiffs insist that the said taxation is largely in excess of all personal property owned by them in *Indiana* in 1865; that the property was not taxable in *Indiana,* and that the assessment and taxation were made without authority of law; that they filed, in *April,* 1866, with the auditor, an affidavit stating the above facts, and asked him to release said property from taxation, and offered to furnish any other evidence he might require that they had so paid a tax on the same for 1865 in *Maryland,* but that he asked for no other evidence, and refused to release the taxes; that the tax

duplicate was delivered to said treasurer, who levied said taxes on the property of plaintiffs, and is about to enforce their collection; wherefore plaintiffs ask for an injunction.

The affidavit of one of the plaintiffs was also filed with the complaint, setting out the same facts as in the affidavit filed with the said auditor; also the copy of the assessment from the tax duplicate.

The defendants appeared and filed their demurrer to the complaint, and assigned as cause of demurrer that the complaint did not state facts sufficient to constitute a cause of action. The court sustained the demurrer, to which decision plaintiffs excepted; and the plaintiffs failing to amend, final judgment was rendered for the defendants, and plaintiffs appeal to this court.

The first question presented by this record is, whether the property in question was properly taxable in the State of *Indiana.* We regard this question as fully settled in the case of *Powell et al.* v. *The City of Madison,* 21 Ind. 335. In that case, this language was used by Judge WORDEN: "It may be true that for the purposes of taxation the *situs* of such property as debts, corporation stocks and such intangibilities may be regarded as the domicil of the owner. *The City of Evansville* v. *Hall,* 14 Ind. 27. But it does not follow that such' is the rule in reference to property that has tangible, corporeal qualities, and must have an actual *situs,* and we think both on principle and authority it may be taxed wherever found, without reference to the domicil of the owner. This subject underwent a very full examination in the case of *Hoyt* v. *The Commissioners of Taxes,* 23 N. Y. 244, and the decision there fully sustains the views above expressed." In the case under consideration, the property was not in transit through the county of *Vigo.* It was brought there, not for immediate reshipment, but that money, labor and skill might be there expended upon it, to enhance its value and change its condition as a merchantable commodity. While there, and undergoing this change in its condition, it, as property, had a *situs*

within the State and was under the protection of its laws. Judge STORY, referring to the *situs* of goods and chattels, observes: "The general doctrine is not controverted, that although movables are, for many purposes, to be deemed to have no *situs*, except that of the domicil of the owner, yet this being but a legal fiction, it yields whenever it is necessary, for the purpose of justice, that the actual *situs* of the thing should be examined." He adds: "A nation, within whose territory any personal property is actually situated, has an entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there." Story on Conflict of Laws, § 550.

Again, it is insisted that the statute does not authorize the taxing of the personal property of *Henry Rieman & Son* to the appellants. Section 10 of the act for the assessment of taxes, (1 G. & H. 70,) provides that "the property of every ward shall be listed by his guardian," &c., "of every company, firm, body politic or corporate, by the principal accounting officer, partner or agent thereof." The averments of the complaint show that the appellants were the agents of *Rieman & Son*, and that it was their duty to list the property for taxation. The assessment was therefore properly made against the appellants. *Powell* v. *The City of Madison, supra.*

It is insisted, however, that it was the duty of the auditor to release the property from taxation upon the affidavit filed, under the ninety-second section of the act for the assessment of taxes. 1 G. & H. 97. That section provides that "if any person who has been assessed with personal property out of the State, shall satisfy the auditor of the county where such assessment is made, by his own affidavit, and such other evidence as such auditor may require, that he has paid a tax on such property for the current year, in any other State in the Union, such auditor shall release such property from taxation." It will be observed that the law requires, first, the affidavit of the person assessed, "that he has paid a tax on such property for the

current year;" second, such other evidence as the auditor may require. In our opinion the first requirement of the statute was not complied with. The affidavit filed with the auditor states "that no specific taxation was made upon the said hogs in the State of *Maryland,* but the said assessment and taxation in the State of *Maryland* were intended and understood to cover and include the entirety of their said business in the said city of *Baltimore* and State of *Maryland.*" The affidavit also states that the taxes assessed in *Maryland* for the years 1864 and 1865 were paid. It was within the knowledge of the appellants whether they had paid a tax upon the property in question in *Maryland,* or not. The property was subject to taxation in *Vigo* county, and it would be a mere act of comity towards a sister State not to enforce the tax in *Indiana,* if it had been already collected in *Maryland.* The affidavit, expressed in language so equivocal, is entitled to little consideration in this court.

It is objected that the assessment of this property was made by the auditor, instead of being made by the treasurer of the county, as required by the "act to authorize county treasurers to assess property which may be omitted by assessors, and to legalize assessments heretofore made by treasurers," approved *March* 3, 1859. 1 G. & H. 74. That act provides that such assessment by the treasurer need not be made upon actual view, and we think the averments in the complaint show an adoption by the treasurer of the act of the county auditor in making the assessment. The demurrer was properly sustained to the complaint.

The judgment is affirmed, with costs.

*B. Smith, C. Y. Patterson* and *J. M. Allen,* for appellants.
*J. G. Crane* and *W. Mack,* for appellees.