INDIANA DEPARTMENT OF STATE REVENUE, Gross Income Tax and Intangibles Tax Divisions, Appellant (Defendant Below),

v.

MERCANTILE MORTGAGE CO., Appellee (Plaintiff Below).

No. 2–578A174.

Court of Appeals of Indiana, Second District.

Dec. 2, 1980.

Rehearing Denied Jan. 14, 1981.

Theodore L. Sendak, Atty. Gen., Victoria R. Van Duren Deputy Atty. Gen., Indianapolis, for appellant.

Wayne C. Ponader, Thomas M. Johnston, Bose & Evans, Indianapolis, for appellee.

SULLIVAN, Judge.

Mercantile Mortgage Company (Mercantile) is a Missouri corporation with its principal place of business in St. Louis. Mercantile is in the business of originating loans and reselling those loans to institutional investors. Since 1963, Mercantile has been qualified to do business in Indiana and has maintained as many as five Indiana branch offices.

After paying Indiana Intangibles Tax under protest, Mercantile requested a refund of tax, penalty and interest for the period of January 1, 1972 through December 31, 1974. Later, that request was amended to include an additional claim for the period of calendar year 1975 and January through November, 1976 as well as for the period from December 1, 1976 through March, 1977. The taxes in dispute were assessed on the notes and mortgages received by Mercantile from Indiana loans.

The trial court allowed the refund and the Indiana Department of State Revenue (Department) appeals. We deem the issues on appeal to be threefold:

1. whether Mercantile is an Indiana resident;

2. whether either Mercantile or the notes and mortgages in question have a business situs in Indiana; and

3. whether the appropriate interest rate on the refund is eight percent.

At the outset, Mercantile asserts that this court need not reach the merits of this case because the Department failed to contest each independent basis for the trial court's holding. That is, the trial court, in holding that Mercantile was not subject to the intangibles tax, set forth several bases, namely:

1. Mercantile was not a person residing or domiciled in Indiana;

2. Mercantile and the notes had no business situs in Indiana; and

3. the Indiana Legislature acquiesced in the position of the Department that Mercantile was not subject to the tax.

Mercantile now urges that the third basis, legislative acquiescence, is an independent basis for affirming the trial court judgment. Since that ground has gone unchallenged, Mercantile asserts that this court is compelled to affirm. We disagree. Although legislative acquiescence is a useful tool of statutory construction, it is not a sufficient independent basis for affirming a judgment. Therefore we will proceed to the merits.

Preliminarily, we point out that while both parties refer to I.C. 6–5.1–2–1 and I.C. 6–5.1–1–7 (Burns Code Ed. 1978) those statutes did not become effective until April of 1977. See I.C. 6–5.1–10A–2 (Burns Code Ed. 1978). The transactions in dispute here took place between January of 1972 and March of 1977. Accordingly, the applicable statute is not I.C. 6–5.1–2–1 or I.C. 6–5.1–1–7 but rather their predecessor I.C. 6–5–

1–2 (Burns Code Ed. 1972). I.C. 6–5–1–2 reads:

> "On and after the passage of this act [6–5–1–1—6–5–1–33], every person residing in and/or domiciled in this state, shall pay a tax to the state of Indiana at the rate and in the manner provided in this act, for the right to exercise any one or more of the following privileges:
>
> (a) Signing, executing and issuing intangibles;
>
> (b) Selling, assigning, transferring, renewing, removing, consigning, mailing, shipping, trading in and enforcing intangibles.
>
> (c) Receiving the income, increase, issues and profits of intangibles.
>
> (d) Having and possessing the right to transmit the same by will and of making gifts thereof and therefrom and of having the right to allow such property to pass to other persons by descent under the intestate laws of the state of Indiana.
>
> (e) For the right to have such intangibles separately classified for taxes levied, assessed and collected on account thereof and/or measured thereby.
>
> Such tax at the rate provided in this act shall be measured by intangibles, wherever located:
>
> (a) Owned by any taxpayer except his intangibles having an actual business situs outside the state of Indiana.
>
> (b) Controlled by any person and/or fiduciary and having a business situs in this state and in the possession of or under the control and/or management of any such person and/or fiduciary."

### I.

■ The Department concedes that Mercantile is domiciled in Missouri but disputes the trial court's conclusion of law that Mercantile was not a person residing in Indiana. It is well settled that a corporation is a resident of its state of incorporation. This concept was noted in *Indiana Department of State Revenue v. Frank Purcell Walnut Lumber Co.* (2d Dist. 1972) 152 Ind.App. 122, 130, 282 N.E.2d 336, 341:

> "Purcell is an *Indiana* corporation doing business at a situs in another state. . . .
>
> That Purcell is a legal resident of Indiana is beyond denial. It is well settled that the legal existence and the citizenship of a corporation can only be in the state where it was created, notwithstanding that the corporation may lawfully do business in other states." (Citations omitted.)

It has been said that a corporation cannot change its residence since it has no legal existence outside its place of incorporation. *Vandevoir v. Southeastern Greyhound Lines* (7th Cir. 1945) 152 F.2d 150, 152, *cert. denied*, (1946) 327 U.S. 789, 66 S.Ct. 811, 90 L.Ed. 1016. Since the Intangibles Tax Act contains no definition of "resident" and since we discern no legislative intent to redefine the concept, we must construe "resident" in its plain and ordinary sense as did the *Purcell* and *Vandevoir* cases, *supra*. See *Meridian Mortgage Co. v. State* (2d Dist. 1979) Ind.App., 395 N.E.2d 433, 439. Mercantile is a resident of its state of incorporation, that is, Missouri. The trial court did not err in its conclusion that Mercantile is not an Indiana resident.

### II.

■ Next, the Department argues that either Mercantile[1] or the notes and mortgages obtained from Indiana loans have a business situs in Indiana. It has long been recognized that the situs of intangibles follows the residence of the owner *unless* the property somehow acquires a permanent situs elsewhere. *Miami Coal Co. v. Fox* (1931) 203 Ind. 99, 176 N.E. 11; *Senour v. Ruth* (1895) 140 Ind. 318, 39 N.E. 946; *Powell v. City of Madison* (1863) 21 Ind. 335. One method whereby property can acquire

---

1. The statute does not call for taxation of a *business* having a business situs in Indiana. Rather, it refers to intangibles having a business *situs*. The Department cites no authority for the proposition that the company itself is taxable. Thus we will address only the issue whether the notes and mortgages obtained from Indiana loans have a business situs in Indiana and are thereby taxable.

its own separate permanent situs is where the property is controlled and placed with some degree of permanency in another state. *Standard Oil Co. v. Combs* (1884) 96 Ind. 179; *Foresman v. Byrns* (1879) 68 Ind. 247; *Herron v. Keeran* (1877) 59 Ind. 472; *Theobald v. Clapp* (1909) 43 Ind.App. 191, 87 N.E. 100.

Our Supreme Court has observed that the general purpose of the Indiana Intangibles Tax Act is to tax the owner *or* persons who controlled intangibles with a business situs in Indiana. *Zoercher v. Indiana Associated Telephone Corp.* (1937) 211 Ind. 447, 7 N.E.2d 282. I.C. 6–5–1–2(b) reads:

> "Such tax at the rate provided in this act shall be measure by intangibles, wherever located:
>
> (b) Controlled by any person and/or fiduciary and having a business situs in this state and in the possession of or under the control and/or management of any such person and/or fiduciary."

The problems of determining control and possession have been discussed by the Attorney General of this state. Although an interpretation by the Attorney General is not binding on this court, it is not without influence. *State Board of Tax Commissioners v. Trustees of Adoniram Lodge of Perfection* (1969) 145 Ind.App. 300, 306, 250 N.E.2d 605, 609. The Attorney General opined that under section 2 of the Intangibles Tax Act of 1933, ownership by a resident or control of the intangible by any person are necessary incidents of tax liability. 1934 Op.Ind. Att'y Gen. 421, 422. Further, in the case of an intangible placed in the control of another, business situs in the state is requisite to taxability. *Id.* at 423. In a subsequent opinion, the Attorney General stated that where an out of state company is authorized to do business in Indiana, "[s]o long as the intangible is held or controlled by the Indiana branch [of an out–of–state company] it is, in my opinion, subject to taxation under our General Intangibles Tax Act." 1940 Op.Ind. Att'y Gen. 203, 205. To clarify the concept of control, the Attorney General quoted in part from an Oklahoma case [2]:

"... In order to constitute a business situs, where intangible property is taxable other than the owner's domicile, it must be shown that possession and control of the property has been localized in some independent business or investment away from the owner's domicile so that its substantial use and value primarily attach to and become an asset of the outside business." 1941 Op.Ind. Att'y Gen. 395, 397.

The pivotal question thus becomes whether possession and control of the intangibles are localized at the Indiana branch. While the Department, in its brief, cites specific bits of testimony to support its contention that the activity was largely local, as a court of review we will neither weigh the evidence nor judge the credibility of witnesses. Instead, we must consider only evidence which supports the trial court's findings of fact and conclusions of law. *Travelers Indemnity Co. v. Armstrong* (3d Dist. 1979) Ind.App., 384 N.E.2d 607, 616.

■ Viewing the evidence accordingly, there is substantial evidence that the possession and control of the intangibles was not localized at the Indiana branch. Gary Sneed, Senior Vice President of Mercantile's Financial and Operations Division, testified about general loan procedures. He explained that determinations as to whether a loan will be extended are made in St. Louis at the home office. The home office receives all payments regarding the loans. Within two weeks of closing, completed documents, notes and mortgages are transmitted to the home office. In addition, the home office services all loans. That is, the process of collecting, applying the mortgage payment, accounting and handling delinquencies or foreclosures occurs in Missouri. Donald Merrill, Jr., Vice President of Mercantile's Residential and Marketing Divisions, also testified about the loan practices of the Indiana branch. He stated that loan funds are sent from Missouri. Typically, checks were drawn in St. Louis and mailed

2. *Grieves v. State ex rel. County Attorney* (1934) 168 Okl. 642, 644, 35 P.2d 454, 456.

to the out of state branch or else the funds were wired there. No records of the loans were kept in Indiana. Anyone with questions concerning his loan was given the Watts line number and directed to call the Missouri home office. No payments on the loans were accepted in Indiana. From this evidence the court committed no error in concluding that the intangibles did not have a business situs in Indiana.

## III.

The final contention by the Department is that the trial court erred in awarding interest at eight percent per annum on the refund. We agree.

The Intangibles Tax statute states, "[I]f the court orders a refund, the state shall pay the refund to the claimant in the same manner that other state claims are paid." I.C. 6–5.1–7–1 (Burns Code Ed. 1978).[3] The manner in which "other state claims" are to be paid is set forth in I.C. 34–2–22–1 (Burns Code Ed. 1978). It directs that the interest rate shall be six percent per annum where the claim or judgment involved is against the state.

Mercantile counters that I.C. 34–2–22–1 is inapplicable and instead I.C. 34–2–22–2 (Burns Code Ed. 1978) controls. The latter statute reads, "Nothing in this act [34–2–22–1, 34–2–22–2] shall apply to the gross income tax division of the state of Indiana concerning the rate of interest." Mercantile urges that the phrase "gross income tax division" should be construed to include the Indiana Department of State Revenue as a whole. Accordingly, it is Mercantile's position that because the Department administers the Intangibles Tax Act, the exemption provision of I.C. 34–2–22–2 applies in the case at bar.

The term "gross income tax division" is defined by I.C. 6–2–1–1(b) (Burns Code Ed. 1978). It states in part:

"There is hereby created a gross income tax division to which the administration and enforcement *of this chapter* is hereby

assigned which is hereinafter sometimes referred to as the 'department'.... and the state when being sued in regard to the tax levied *under this chapter* shall be sued in the name and style of the gross income tax division...." (emphasis supplied).

The chapter referred to above is chapter one, Gross Income, Sales and Use Tax, I.C. 6–2–1–1 through I.C. 6–2–1–53. The definition used is then confined to *that* chapter. In addition, the Indiana Department of State Revenue Act states in part that the department shall be governed by a board, I.C. 6–8–3–3 (Burns Code Ed. 1978), and that the board shall have authority over: "(a) The gross income tax division [6–2–1–1–6–2–1–36]". I.C. 6–8–3–4 (Burns Code Ed. 1978). This too suggests that the income tax division is a separate and distinct entity.

We discern no legislative intent to extend the definition contained in the gross income tax chapter to all chapters of Title 6 on taxation. In fact, each article in Title 6 contains its own definitional section. Had the legislators intended to exempt *all* divisions of the Indiana Department of Revenue from the provisions of I.C. 34–2–22–1, they surely could have and would have included specific language to that effect. The judiciary is required to give effect to clear and unambiguous language in a statute. *State v. Turner* (2d Dist. 1979) Ind. App., 386 N.E.2d 208, 209. We are not at liberty to alter the meaning of words to achieve a result we believe the General Assembly intended. We therefore hold that the six percent interest rate mandated by I.C. 34–2–22–1 is applicable to a refund from the Intangibles Tax division of the State Department of Revenue.

Affirmed in part and reversed in part. The cause is remanded for further proceedings consistent with this opinion.

BUCHANAN, C. J., and SHIELDS, J., concur.

---

**3.** The original version of the statute was I.C. 6–5–1–7. The substance of the provision has not been changed.