HUMPHREY DESMOND *versus* INHABITANTS OF MACHIAS PORT.

To render a non-resident liable to be taxed for merchandize in a store, shop or
mill, or upon a wharf, (as provided by c. 6, § 11, of R. S.,) his occupancy
must be under such circumstances as would constitute him the owner of the
premises for the time being.

*Thus*, the occupancy of a portion of a wharf, assigned to a non-resident by
metes and bounds, to which he brought, from his mills in another town, his
lumber, placed it thereon, and it there remained for several months, await-
ing a sale or shipment, — his right thus to use the premises, being (by a
written lease) fixed and certain for a long period of time, — *was held* to be
an occupancy contemplated by the statute.

THIS was an action of ASSUMPSIT.

The facts material to an understanding of the case, as
agreed by the parties, will be found in the opinion of the
Court.

The case was argued by

*Walker*, for the plaintiff, and by

*G. F. Talbot*, for the defendants.

The opinion of the Court was drawn up by

MAY, J.— The case finds that the plaintiff, on the first day
of April, 1848, had, upon a wharf within the defendant town,
a quantity of laths and long lumber, for which the assessors

of said town taxed him for that year, notwithstanding he was then an inhabitant of Whitneyville. The right to make such assessment, under the R. S., c. 6, § 11, depends upon the fact whether the plaintiff then occupied any store, shop, mill or wharf in said defendant town. It is admitted that he occupied no such store, shop or mill, but it is insisted, in defence, that he did occupy the wharf upon which said lumber was piled. Whether he was an occupant of the wharf, within the meaning of the statute, is the only question which has been discussed or raised by the counsel in the case. It is mutually conceded that upon this point the whole case turns.

It appears that the plaintiff had a lease of a mill called the shore mill, situate in Whitneyville, for the term of five years from April 1, 1855, at the annual rent of $950, with the right to have all lumber sawed at said mill landed on the railroad wharves, at Machias Port, so far as practicable for the portion of the wharves to be appropriated for said mill, and the lumber was to be shipped free of wharfage. The plaintiff had a portion of a wharf assigned to him by metes and bounds, as a place to land his lumber, and has used the same for that purpose since the taking of said lease.

In 1857, the plaintiff manufactured large quantities of lumber at said mill, which was carried over the railroad and landed upon that part of the wharf assigned to him, and shipped therefrom. The lumber remained upon the wharf only until vessels could be procured to ship it. That portion of it which was assessed was put upon the wharf in 1857, and shipped the next spring as early as a vessel could be obtained, but not until after the first day of April. Other parts of the wharf seem to have been held and used by other persons under like circumstances.

Do these facts show an occupancy of the wharf within the meaning of the statute? The plaintiff appears to have had the entire control of that part of the wharf assigned to him and to have had the sole use of it, after the assignment under his lease. In the case of *Campbell & al.* v. *Inhabitants of Machias*, 33 Maine, 419, SHEPLEY, C. J., in announc-

ing the opinion of the Court, remarks, that "the design of the statute was to render liable to taxation the property of individuals who *so* occupy a mill or wharf as that they should be entitled to receive, and not liable to pay mill rent for the lumber from time to time sawed in the one, or wharfage for lumber deposited on the other." In this view, the statute contemplates an actual occupancy, implying something more than a mere right to make temporary deposits from time to time, or to pass in common with others, over the wharf, with goods, wares, merchandize or lumber, for the purpose of immediate shipment. It does not, however, make the liability to be taxed depend upon the purpose for which the lumber was piled upon the wharf. Such purpose is only one of the ingredients by which we may determine the character of the occupancy, and whether it was merely occasional and temporary, being subject to the direction and control of another, or fixed, certain and entire without such direction and control.

Under the statute, in order to lay the foundation of the right to tax a non-resident, we think the store, shop, mill or wharf must be occupied under such circumstances as will constitute the occupant, during his occupancy, the owner *pro hac vice*, as against other persons. It must be used by the occupant, as if it were his own for the time being. In the case before us, the fact, that the plaintiff's limits were assigned by metes and bounds; that the right to use the premises was fixed and certain, for a long period of time, without interruption from the owners; and that the premises were in fact so used under a written lease, satisfactorily shows that the plaintiff was an occupant of the wharf within the meaning of the statute. His control of the wharf, as assigned to him, was, for the time provided for by the lease, as entire and absolute as if he had been the owner of the premises; and his occupancy seems to have been such as would, if it had been adverse, constitute a disseizin of so much of the wharf as was occupied by him. Had he been the actual owner, and used the wharf in the same way, the right to tax could not be doubt-

ed. Under such circumstances, the plaintiff, in the judgment of the Court, was legally taxable in the defendant town, for the lumber for which he was assessed. *Plaintiff nonsuit.*

TENNEY, C. J., RICE, APPLETON, CUTTING and KENT, JJ., concurred.