### COE v. ERROL.

It is competent for any state to provide that tangible personal property within it may be taxed there irrespective of the residence of the owner; but if he be a non-resident, such property must have an actual *situs* within the state where the tax is assessed, and therefore is not taxable in a state through which it is merely passing in the usual course of transportation.

Section 13, c. 54, Gen. Laws, in relation to the taxation of wood, bark, timber, logs, and lumber, is not repugnant to the constitution of the United States, nor to the constitution of this state.

PETITION, for the abatement of taxes. The opinion states the facts.

*W. & H. Heywood*, for the petitioner. The questions for adjudication in this case depend upon the right of a town to tax logs in transit to another state to be there manufactured into lumber for market. Part of the logs were cut and drawn from Wentworth's Location into the town of Errol, in the winter, and were placed on the banks of streams which were public highways to float logs, and as soon as the rivers opened in the spring they were run into the Androscoggin river and to Maine, there to be manufactured for market. The other part of the logs were cut in Maine, and were taken through the Rangeley Lakes into Lake Umbagog and into the Androscoggin river, and reached the town of Errol so late in the spring as to be detained by low water till the next spring, and so they were in Errol on the first of April, when they were taxed.

The owners of the logs were residents of Maine. The legal *situs* of this personal property for purpose of taxation was not where it happened to be on the first of April. *Conley* v. *Chedic*, 7 Nev. 336; *Parker Mills* v. *Tax Com.*, 23 N. Y. 245; *Ellsworth* v. *Brown*, 53 Me. 519; *Campbell* v. *Machias*, 33 Me. 419; Bur. Tax., c. 4, ss. 48–50; Cool. Tax. 269. The cases cited from the Maine reports show that by the statute of Maine the logs taxed in Errol were subject to taxation at Lewiston, where the owners occupied a mill and one of them resided.

We contend that when the logs were taken from Wentworth's Location, in the winter, to another town, and were placed in a position to be transported on a public highway, the transit began at the time they were taken from the stump, and the waiting for the streams to open was a detention that did not make them liable to taxation where they happened to be. If the ice broke up on the last of March the logs would be gone, but if it did not break up till the second of April, then they would be in Errol on the first of April. Such accidents as to the place where property chances to be cannot determine the place where it shall be taxed. The team of a traveller cannot be taxed in Errol because a snow-storm detains him from the last day of March till the second day of April. We contend that the logs that came from Wentworth's Location were in transit the same as those that came from Maine. And as to those that came from Maine, and were detained on their way, there can be no doubt that they were illegally taxed.

By the U. S. Const., art. 1, s. 8, par. 3, power is given to congress " to regulate commerce . . . among the several states;"

and by *s.* 10, *par.* 2, that "No state shall without the consent of congress lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws." We claim that the tax in question on the logs of the petitioner was a clear violation of these provisions of the federal constitution.

It has uniformly been held by the supreme court of the United States, that a tax assessed under a state law, upon property being transported through the state, or from a point in the state to another state, was in violation of these provisions of the United States constitution. *State Freight Tax,* 15 Wall. 232; *Almy* v. *California,* 24 How. 169; *Woodruff* v. *Parham,* 8 Wall. 123; *Steamship Co.* v. *Portwardens,* 6 Wall. 31; *Welton* v. *Missouri,* 91 U. S. 275; *Railroad Co.* v. *Husen,* 95 U. S. 465; *Cook* v. *Pennsylvania,* 97 U. S. 566. Transportation of merchandise through a state, or from one state to another, are matters of national legislation. *State Freight Tax,* 15 Wall. 232; *Hall* v. *De Cuir,* 95 U. S. 485. "The power to regulate commerce among the several states was vested in congress in order to secure equality and freedom in commercial intercourse against discriminating state legislation." *Field,* J., in *Railroad Co.* v. *Richmond,* 19 Wall. 589; *Welton* v. *Missouri. supra.* The non-exercise by congress of its power to regulate commerce among the states, is equivalent to a declaration by that body that such commerce shall be free from any restriction. *Welton* v. *Missouri.*

It will be said that this tax is no attempt to regulate the commerce upon the Androscoggin river passing through this state, or from this state into Maine, but is a tax upon property in fact located within the state, and legally taxable here. The answer to this position is the practical effect of taxes assessed upon property thus situated. Admit the power of the state to assess taxes upon property thus in transit between the states, and interstate commerce will be regulated by state taxation irrespective of any laws or regulations congress can devise for that purpose, under the power given by the constitutional provision just cited. This position has always been taken to sustain state taxation, and has been answered by the supreme court, in the case of the *State Freight Tax,* 15 Wall. 272. "It has repeatedly been held that the constitutionality or unconstitutionality of a state tax is to be determined, not by the form or agency through which it is to be collected, but by the subject upon which the burden is laid." This was decided in the cases of *Bank* v. *New York City,* 2 Black 620; *Bank Tax Case,* 2 Wall. 200; *Society* v. *Coite,* 6 Wall. 594; *Provident Inst.* v. *Massachusetts,* 6 Wall. 611; *Brown* v. *Maryland,* 12 Wheat. 419; *Henderson* v. *The Mayor of N. Y. City,* 92 U. S. 259.

The case of *State* v. *Engle,* 34 N. J. Law 425, is in point upon this branch of the case. Our statute, like the one there in question, intended to reach property in transit through the state, for the

purpose of taxation in the state. The court in that case recognizes
the powers of the state to tax property which has not become the
subject of commerce, as in *Currier* v. *Gordon*, or which has been
the subject of commerce and has become mingled with the other
property of the state. In relation to property in transit through
the state the court say,—" But that a tax on the property belong-
ing to a citizen of another state, in its transit to market in other
states, which is delayed in this state not for the purpose of sale but
merely for separation and assortment for convenience of shipment
to its destination, is a tax on commerce among the states, is too
plain for argument."

*Ladd & Fletcher*, for the defendants. " Wood, bark, timber,
logs, and lumber, manufactured or other, exceeding fifty dollars in
value, shall be taxed at its full value in the town where it is on the
first day of April," etc. G. S., *c.* 54, *s.* 13. " When such prop-
erty is in any town, other than that in which it was cut, on the
first day of April, on its way to market, or temporarily delayed
therein on its way to market, if the owner, residing in the state, fur-
nishes to one of the selectmen a statement," etc., it shall be taxed
in the town where the owner lives. G. S., *c.* 54, *s.* 15. Section 13
was passed in 1860, and *s.* 15 in 1863. It is not known that the
validity of these provisions has been before questioned, although
they have thus been in operation for about twenty years. The
legislature have not left any room for doubt as to their intention.
The enactments need no exposition, and admit of none. No
assessor could mistake their meaning, and none probably has ever
done so.

The question is not what the law means, but whether it is law;
or whether it is of no effect by reason of some constitutional pro-
vision with which it conflicts. The plaintiff claims that it is in
conflict with both the constitution of this state and the constitu-
tion of the United States.

I. As to the constitution of this state: The suggestion is that
the law is unconstitutional because the tax it authorizes is not
"reasonable."

The provision of section 9 of the same chapter is, that animals
shall be taxed in the town in which they are "kept." Has the
legislature constitutional power to say that property shall be taxed
in the town where it is kept, and not to say that it shall be taxed
in the town where it is on the first day of April? The law on its
face is simply a legislative declaration of the town in which this
species of personal property shall be taxed; and if we understand
the plaintiff's argument, it goes rather to the interpretation and
application of the law in this particular case, than to the question
of its constitutionality. For the contention seems to be,—

1. That the owners reside outside this state, and so will derive
no benefit from the taxation.

2. That they may be required to pay another tax on the same property in Maine.

3. That the property was in transit from the timber lands of the plaintiff in one part of Maine to his mills in another part of the same state, and therefore that it had no *situs* in this state for purposes of taxation.

Neither of these propositions seems to go to the constitutionality of the law.

1. " It is competent for any state to provide that tangible personal property situate within it may be taxed there irrespective of the residence of the owner." Cool. Tax. 43. " The protection may be either to rights of person, or to rights of property, and taxes may consequently be imposed when either person or property is within the jurisdiction." *Ib.*, 14.

2. If the owner of property so manages and deals with it that it is liable to be taxed by the laws of two different states in the same year, it does not follow that either state must yield to him the right which they thus assume to exercise; nor does it follow that either must surrender to the other the right to enforce the execution of her own laws. It would probably be a novel spectacle for the court of this state to enter upon the inquiry whether these logs are taxed to the plaintiff by the laws of Maine, with a view of giving the result of that inquiry any weight in determining whether the legislature of this state have exceeded their power in decreeing that they shall be taxed in this state. Cool. Tax. 158–163.

3. Much has been said as to the matter of *situs;* but in no case have we seen it questioned but that the legislature of a state has power to say that the *situs* of a thing for the purposes of taxation shall be its actual location on the day the tax is laid. " Unless restrained by provisions of the federal constitution, the power of the state as to the mode, form, and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction." *State Tax on Foreign Held Bonds*, 15 Wall. 300, 319.

In *Hoyt* v. *Commissioners*, 23 N. Y. 224, the statute was,—"All lands and personal estate within this state shall be liable to taxation." *Comstock*, C. J., says,—"If we are willing to take this language, without attempting to obscure it by introducing a legal fiction as to the *situs* of personal estate, its meaning would seem to be plain." Again : " I find no room for interpretation, if we take the words of the statute in their plain, ordinary sense." Again : " To me, it is evident that the legislature were not enunciating a legal fiction, which, as we shall presently see, expresses a rule of law in some circumstances and relations, but which in others is not the law. They were speaking in plain words, and to the plain understanding of men in general." " Although movables are for many purposes to be deemed to have no *situs* except that of the domicile of the owner, yet, this being but a legal fiction, it yields

whenever it is necessary for the purpose of justice that the actual *situs* of the thing should be examined. A nation within whose territory any personal property is actually situate, has as entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situate there." Sto. Con. Laws, *s.* 550. Authorities might be greatly multiplied to the same effect. A number of pertinent cases are referred to in *Hoyt* v. *Commissioners, supra.* But this is enough, we think, to show that it was competent for the legislature to determine finally and absolutely the question of *situs* so far as to say that any thing actually situated within this state on the first day of April should be subject to taxation. The legislature have undertaken to say, in words too plain to be misunderstood, where the "legal situs" of this kind of property shall be for the purpose of taxation. Their voice on that point is authoritative and final. What the power having supreme discretion and supreme authority over the whole subject has said shall be the legal *situs* regardless of any fiction, must be taken to be the legal *situs.* The legal *situs* and the actual *situs* are thus made one and the same thing by positive enactment, and cannot be separated.

The plaintiff claims that inasmuch as the land in Wentworth's Location, from which part of these logs were taken, was taxed by the state and county, upon the valuation of 1879, a further imposition upon the logs, when severed from the land and moved into another town cannot be sustained, for the reason, as we infer, that the same thing is thus subject to a double tax.

If this is the objection, it is very plain that it goes to the whole law; for in the case of logs which on the first day of April are in the same town as the land on which they were cut, the land from which they came is taxed for all purposes, municipal as well as state and county, and then the logs are taxed also for the same purpose according to the requirements of the law : what is the fault in this? Obviously, that if the land has been substantially diminished in value by removing the timber, that may be taxed for more than it is worth; and the remedy is plain, namely, an abatement of that excessive tax on the land. The timber, being taxed only at its true value as personal property, there is no legal grievance to the owner in that part of the transaction. If he has a grievance at all, it must be in the fact that the land is taxed too high.

To show how baseless this claim must be, we have only to suppose that the land from which the timber is taken is the property of one man, and the timber, April 1, the property of another—a very common situation. How is the owner of the timber aggrieved by the fact that the owner of the land is taxed too much for it, by reason of its diminished value?

II. The plaintiff claims that this law, as applied to the logs, which come from his land in Maine, and which year by year he

keeps over in the river within the geographical limits of New Hampshire, is in conflict with the constitution of the United States:

(1) With the provision that " The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states."

(2) With the provision that " The congress shall have power to regulate commerce with foreign nations and among the several states."

(3) With the provision that "No state shall, without the consent of the congress, levy any imposts or duties on imports or exports, except," etc.

As to the first and third clauses above, we apprehend but little difficulty will be found. The answer to the first point is, that the law makes no discrimination whatever against citizens of other states. By no possibility can it be claimed that the statute would not apply exactly the same if the owner of the logs were a citizen of this state. The answer to the third is, that the tax complained of is not, in form or substance, an impost or duty on imports or exports.

Is it an unlawful interference by the state with the power of congress to " regulate commerce among the several states"? We maintain that it is not; and suggest, what is so often said, that the court must be satisfied beyond a reasonable doubt that it is, before they undo the work of the legislature by holding it unconstitutional.

Is the transportation of logs by the plaintiff from his land in one part of Maine to his mill in another part of the same state " commerce among the several states"? Suppose the plaintiff should adopt some other mode of conveyance in which the logs should not pass outside the boundaries of Maine: would the transportation then be a commerce among the several states? Certainly not. Then why should it be called commerce among the several states when in transportation they pass within the limits of New Hampshire, unless it be for the purpose of interposing the shield of the constitution of the United States against some improper or unjust taxation on the part of this state,—some unfair and inequitable advantage sought to be taken by this state of the fact that they come within our territorial limits? The substance of the thing is the same whether in transportation they go out of Maine or not. It is simply the moving of a commodity by the owner from one part of the state to another.

Suppose the Androscoggin river were wholly in Maine, and the plaintiff, in moving his logs to his mill, found it convenient or necessary to allow them to lie over a year, or nearly a year, within the limits of some town in that state: what right of the plaintiff would be violated, what constitutional provision infringed, by a statute of Maine authorizing and requiring the proper officers of

such town to levy a tax on them for state, county, and town purposes? Who would think of setting up this provision respecting commerce among the states, or any other constitutional provision, against the unquestionable prerogative of the Maine legislature to levy a tax upon property thus within the jurisdiction of that state? The matter of *situs* we have already considered, and that is a thing entirely separate from this constitutional provision, and not to be confounded with it. The fact that the logs are in transit is of no consequence. The legislature would have most unquestionable power to say they should be taxed in the town where they had been kept by the plaintiff for nine or ten or eleven months immediately preceding the taxing day, whether the delay was for want of water or for any other cause. And it cannot be pretended that it would make any difference with the validity of such law that the owner of the logs was a citizen of New Hampshire.

Now, if this could lawfully and justly and properly be done by Maine, provided the whole transit, as well as the year's delay, were within that state, why may it not justly and properly be done by this state when the logs are kept for nearly a year immediately before the taxing time stored within the limits of some town in this state? Each year the plaintiff keeps a large quantity of mill logs within the limits of this state. It is true they change every year: the old drive gives place to the new one, and there is a space of a few weeks when there are none. But the substantial fact of the business is, that he keeps, year by year, a large quantity of logs within this state, entitled, like all other property within our limits, to the protection of our laws. If they lay, under precisely the same circumstances, just the other side of the line in Maine, the legislature of that state confessedly might levy a tax upon them. What sound and just reason is there why New Hampshire should be debarred of the same right? Why stretch the meaning of the words "commerce among the states" so as to make it cover the case of a person moving his property between two towns in the same state, when the only end to be gained is a denial of power to another state through which he carries it to do exactly what his own state might lawfully have done provided the property had not passed outside its limits? Our point is, that the operation of conveying property from one town to another in the same state cannot fairly be said to be commerce among the several states, and that there is no equity and no comity to be subserved by engrafting upon the language such a meaning by construction.

Suppose a citizen of New Hampshire owns a farm in Lancaster and another in Claremont, and every year he has a large number of cattle which he finds it convenient and profitable to drive from the former to the latter place;—in doing this he finds it for his interest to cross the river into Vermont, and to keep each year's drove for the space of nearly a whole year in some town on the road in that state, thus in the ordinary course of his business keep-

ing almost constantly in Vermont a nearly uniform stock of cattle: could the prosecution of such a business be fairly called commerce among the several states, so that the constitutional provision could be invoked to forbid the legislature of Vermont from calling upon the property thus kept within the state to contribute its just proportion towards maintaining the government whose protection it enjoys? We contend that what New Hampshire might lawfully do in the way of taxing the cattle, provided the owner stopped his droves each year in Hanover, Vermont might do provided he stopped them in Norwich.

No case like this has been found in the books. No case where a state tax or impost of any kind laid by a state in any way upon the thing itself or upon the business has been held to be an attempt to regulate commerce among the states where the business was not an interchange of commodities between different states.

The case of *State* v. *Engle*, 34 N. J. Law 425, seems to go as far as any case has yet gone, and is claimed by the plaintiff to be in point in support of his position. But that case is quite broadly distinguished from this by at least two important facts: First, the coal was the property of citizens of Pennsylvania, sent across New Jersey to market in other states; second, it was delayed no longer in New Jersey than was necessary for the convenience of transshipment for transportation to its destination. It was upon these two facts that the decision was most distinctly placed, and neither of those facts exists in the present case. The other cases cited have but a remote bearing at best, and most of them show a discrimination against the citizens of other states which brings them within the ban of art. 4, *s.* 2, of the federal constitution.

We think it may fairly be urged that the state court should not go beyond the decisions of the federal court in cutting off sources of revenue which the legislature of the state have solemnly decided to be fairly and justly open to the people of the state, especially when, as in this case, it appears from an examination of the subject that their judgment rests upon the broad and fundamental ground that all parties who receive or are entitled to the protection of the government may be called upon to render the equivalent in taxes. Cool. Tax. 14. And we submit that no case has yet been decided by the supreme court of the United States which goes far enough to uphold the plaintiff's contention here.

BLODGETT, J. The petitioner, a resident of Bangor, Me., asks for an abatement of the taxes assessed by the defendant town in April, 1880, and in April, 1881, upon a lot of logs therein, of the value of some $6,000, which had been cut and drawn there during the preceding winters from Wentworth's Location in this state, and which were owned by himself and other non-residents. It is alleged in the petition and admitted to be true, that at the time the assessments were made the "logs were being taken by the

owners on the way to Maine, to be manufactured and sold;" and the claim of the petitioner is, that they were not subject to taxation in Errol "for the reason that they were in transit to market from one state to another, and also because they had all been in other ways taxed." No facts appear tending to support the last reason, and hence it requires no consideration.

The assessments were made under *s.* 13, *c.* 54, Gen. Laws, which provides that wood, bark, timber, logs, and lumber, manufactured or other, exceeding fifty dollars in value, shall be taxed at its full value in the town where it is on the first day of April. The meaning of this provision is not controverted, and the objections to its constitutionality are readily answered by the application of well settled principles to the facts set forth in the petition.

The consideration upon which taxation is based is the protection of the government to rights of persons or to rights in property, and taxes may consequently be imposed when either person or property is within the jurisdiction. Cool. Tax. 14. But taxation and protection being reciprocal, it follows that a personal tax can only be assessed on residents,—and for this reason, as well as the additional one, that by a fiction of the law personal property is supposed to accompany the owner, and for many purposes is deemed to have no *situs* except that of his domicile. Such property cannot be taxed unless it has an actual *situs* within the state where the tax is assessed, and hence is not taxable in a state through which it is merely passing. Subject to this qualification, " it is competent for any state to provide that tangible personal property situate within it may be taxed there irrespective of the residence of the owner." Cool. Tax. 43, and authorities cited, among which are *Green* v. *Van Buskirk,* 7 Wall. 139, 150; *Company* v. *Blackstone,* 13 Gray 488; *Leonard* v. *New Bedford,* 16 Gray 292; *Hartland* v. *Church,* 47 Me. 169; *Desmond* v. *Machias Port,* 48 Me. 478; *Catlin* v. *Hull,* 21 Vt. 152; *Mills* v. *Thornton,* 26 Ill. 300; *St. Louis* v. *Ferry Co.,* 40 Mo. 580; *Rieman* v. *Shepard,* 27 Ind. 288; *Steere* v. *Walling,* 7 R. I. 317; *Hoyt* v. *Com'rs,* 23 N. Y. 224; *People* v. *Ogdensburgh,* 48 N. Y. 390; *Hood's Estate,* 21 Pa. St. 106, 114; *Maltby* v. *Railroad Co.,* 52 Pa. St. 140; *State* v. *Falkinburge,* 15 N. J. Law 320.

The only inquiry upon this branch of the case then is, whether the petitioner's logs had an actual *situs* in this state when the taxes imposed upon them were assessed. But one answer is possible. The trees from which the logs were cut obviously had an actual *situs* in Wentworth's Location, and rightfully constituted a portion of the taxable property of the state. It is equally obvious that after they were severed from the soil and became logs they were just as much under the protection of the state as before, and consequently just as much a part of its property for purposes of taxation, and that this reciprocal right of protection and taxation would cease to exist only when the logs passed into the territory and jurisdiction of another state.

But it is urged that inasmuch as the logs were in transit and seeking a market in another state, the tax imposed was one upon commerce, and therefore in conflict with the federal constitution. This contention is groundless.    At most, the statute under which the assessment was made simply acts upon and affects property which may be the subject of commerce.    But a tax on property that may be the subject of commerce under congressional regulation is not a tax on commerce, but on property (*Scott* v. *Willson*, 3 N. H. 321, 326, Cool. Tax. 62); neither is a tax on property that has been the subject of such commerce, where it is taxed only as property, and in common with all other property within the state.  *Brown* v. *Maryland*, 12 Wheat. 419 ; *Purvear* v. *Commonwealth*, 5 Wall. 475, 479 ; *Waring* v. *The Mayor*, 8 Wall. 110.

The conclusion then is, that the logs in question, having at the time of their taxation an actual and legal *situs* in this state, and having been taxed only as property and in common with all other property under a law making no discrimination in respect of ownership, no case is made for relief.

The petitioner also asks for an abatement of the taxes, assessed by the defendants in 1880 and 1881, upon a lot of logs owned by himself and one Pingree, another non-resident, which had been cut in Maine and driven through the Rangeley lakes and rivers into the Androscoggin river in this state, and, while on their way to mills owned by Pingree and himself in Lewiston, Me., had, on account of low water, been left in Errol in the summers of 1879 and 1880. The petition also sets forth that the Androscoggin river then was, and had been for more than twenty years, a public highway for the floating of timber and logs from the lakes and rivers in Maine down that river to Lewiston, and had been so used by the petitioner and his associates for more than twenty years last past.

The facts thus stated clearly show that these logs were brought into this state in the usual course of transportation, and remained here no longer than was necessary under the circumstances.    In short, they were merely passing through the state, and therefore were not taxable in this jurisdiction.    *Conn. Riv. Lumber Co.* v. *Columbia*, *ante*, 286.

The result is, that the petitioner is entitled to an abatement of the taxes assessed on the logs cut in Maine only.

*Case discharged.*

DOE, C. J., did not sit: the others concurred.