**INTERSTATE COMMERCE COMMIS- SION, Plaintiff,**

v.

**Lewis C. HOWARD and Jerry Iverson, Defendants.**

**No. K-66-71 C.A.**

United States District Court, W. D. Michigan, S. D.

May 31, 1972.

Walter J. Alprin, Chicago, Ill., for plaintiff.

James R. Stiverson, Columbus, Ohio, J. M. Neath, Jr., Grand Rapids, Mich., for defendants.

## OPINION AND ORDER

FOX, Chief Judge.

By this action the Interstate Commerce Commission (ICC) seeks to enjoin

the defendant motor carriers from conducting further line haul operations between nonairfield points in and around Benton Harbor and Kalamazoo, Michigan and O'Hare and Midway Airports in Chicago, Illinois. Defendants contend that their operations are supported by direct ICC authority and that, to the extent their operations are not expressly authorized, ICC authorization is not required.

A detailed stipulation of facts has been filed by all of the parties hereto. Defendants have been and are currently engaged in freight transportation as motor carriers to and from the above-named Chicago airports to and from numerous points in the Benton Harbor and Kalamazoo areas. Defendant Iverson holds no authorization from the ICC to engage in the motor transportation of property in interstate commerce. Defendant Howard does hold the following authority, docketed as MC–134241:

> *General commodities*, except classes A and B explosives, household goods as defined by the Commission, commodities in bulk, and those requiring the use of special equipment,

> Between Ross Field, Benton Harbor, Mich., and Kalamazoo Airport, Kalamazoo, Mich., on the one hand, and, on the other, O'Hare Field and Midway Airport, Chicago, Ill.

> RESTRICTION: The authority granted herein is restricted to the transportation of traffic having an immediately prior or subsequent movement by air.

Local pick-ups in Benton Harbor and St. Joseph, Michigan have been conducted by Iverson, in his vehicle, while the over-the-road transportation to Illinois has been performed in Howard's vehicle, at the expense of Iverson.

The plaintiff, ICC, contends that the described operations require authorization and that the authorization granted to Howard does not include the operations described. By stipulation, the authorization of the destination points, and the fact that the restriction as to prior or subsequent air transportation has been met and the fact that the commodities are within the scope authorized are not contested by plaintiff.

This court has jurisdiction over the subject matter of this action under the provisions of 49 United States Code, Section 322(b) (1).

The controversy posed to the court must, for the sake of clarity, be divided into two basic components. The first is the question of the scope of the authority held by defendant Howard. The second is the issue of whether any exemptions of the Motor Carrier Act apply here to shield defendants from the general statutory mandate of 49 U.S.C. §§ 306(a), 309(a) and 303(c) that motor common, contract or for-hire transportation in interstate commerce shall be performed only by those parties holding authority from the Interstate Commerce Commission.

■ The answer to the first question, once that question is appropriately isolated, must be as plaintiff urges. The operating authority held by defendant Howard is specific and unambiguous. It authorizes freight hauling between the specified airfields and nothing more. Nonairfield points of departure or destination are simply not authorized. Nor can the position be accepted that since these points are located within municipalities, the authority may be implicitly read to authorize transportation to and from all points within the "commercial zones" of those cities. The Commission has explicitly rejected such an application of the exemption provision recorded at 49 U.S.C. § 303(b) (8). In its ruling on Commercial Zones and Terminal Areas, 54 M.C.C. 21, 92 the Commission directly addressed this subject:

> "Despite the conclusion that authority to serve a particular municipality may

be construed as authority to serve also all contiguous or adjacent points or places which are within the commercial zone of the authorized municipality, operating authorities which are definitely *limited to particular territory* cannot under any circumstances be construed as implied authority to serve in any way any points or places which are, in fact, beyond the described limits of the authority granted, even though such a point or place is contiguous or so adjacent to a municipality located in authorized territory as to be within the commercial zone thereof."

Since defendant was not authorized to serve any municipality, the commercial zone exemption is simply inapplicable here. Defendant's authority relates to the named airfields exclusively. United States v. W. J. Dillner Transfer Co., 315 F.2d 107 (3rd Cir. 1963).

█ Given that defendants' challenged operations have not been authorized, the question merely remains whether these operations are exempted from authorization requirements. The exemption urged by defendants is that recorded at 49 U.S.C. § 303(b) (7a):

"(b) Nothing in this chapter . . . shall be construed to include . . . (7a) the transportation of persons or property by motor vehicle when incidental to transportation by aircraft; . . ."

This exemption, however, is inapplicable to the instant case, since it merely exempts pick-ups and deliveries within the "terminal area" of an airport for the purpose of servicing air carriers at that airport. In almost all cases this terminal area is defined as the area within a 25-mile radius of the airport in question. Hence, freight flown into a given airport may be transported immediately to a destination point within 25 miles of that airport by motor carrier without the need of an ICC grant of authority. Likewise, cargo may be picked up in the surrounding area and delivered directly to the airport for shipment by air carrier.

█ That the Benton Harbor and Kalamazoo points of departure in defendants' operations are well outside the terminal areas of the destination Chicago airports, however, is clear and has been stipulated by defendants. In view of this undisputed fact, defendants' claim to exemption must fail. They could legally transport goods, without authority, to the Benton Harbor airport, Ross Field, from points within 25 miles of that field, if those goods were then transported by air, but they must have express authority to transport goods so collected all the way to a Chicago airport.

The scope of the Section, 303(b) (7a), was directly confronted in the case of Kenny Extension—Air Freight, 61 M.C. C. 587 (1953). This decision applied the 25-mile rule of thumb used by the Civil Aeronautics Board in defining the breadth of a terminal area wherein the "transportation incidental to air" exemption controlled. Further summary rulings of the Commission on this subject clarified the limitations of the exemption. In Motor Transportation of Property Incidental to Transportation by Aircraft, 95 M.C.C. 71 (1964), the Commission stated:

"The key word here, we think, is 'incidental.' In the absence of any definitive legislative history or evidence to the contrary, we believe, having reviewed our past decisions involving section 203(b) (7a), that our prior interpretation is essentially correct, is consistent with the intent of the Congress, and is consonant with the aims of the national transportation policy. "In the Kenny case, 'incidental' was defined as follows, 61 M.C.C. at 595:

'Motor transportation is "incidental" to transportation by air when that motor transportation is limited to a bona fide collection, delivery, or transfer service within a reasonable terminal area of the air carrier.

**1116**

Conversely stated, such motor transportation is not "incidental" to transportation by air when it is transportation having the character of a connecting-carrier line-haul service.'"

■ Defendants' operations can only be viewed as line-haul over-the-road interstate transportation by motor carrier. They do not merely "incidentally" service air traffic; rather, they constitute a major link in an overland interstate transportation service. As such they must be authorized as provided by the Interstate Commerce Act. Mere ultimate relationship to transportation by aircraft does not alone suffice to establish the applicability of the *"incidental to transportation by aircraft"* exemption.

■ In sum, defendants have the right, without authority, to collect goods in and around Ross Field, Benton Harbor, Michigan and Kalamazoo Airport and to deliver them to such airports, respectively, for subsequent air shipment. Their ICC authority allows them, in addition, to transport goods from these airports to O'Hare and Midway Airports in Chicago, Illinois. But transportation from nonairfield points in Michigan to any interstate destination is not authorized and must be authorized to be lawful.

Accordingly, it is the order of this court that defendant Jerry Iverson, doing business as Iverson Motor Freight, his agents, servants, employees and representatives shall cease and desist from transporting by motor vehicle persons or property, directly or indirectly, in interstate commerce for compensation as a motor common or contract carrier unless and until such time, if at all, that there shall be in force with respect to said defendant a certificate of public convenience and necessity or other appropriate authorization issued by the Interstate Commerce Commission authorizing said defendant to engage in such operations.

It is the further order of this court that defendant Lewis C. Howard, doing business as Howard Motor Freight, his agents, servants, employees and representatives shall cease and desist from transporting by motor vehicle persons or property, directly or indirectly, in interstate commerce for compensation as a motor common or contract carrier to or from points other than Ross Field, Benton Harbor, Michigan, Kalamazoo Airport, Kalamazoo, Michigan, Midway and O'Hare Airports, Chicago, Illinois'unless and until such time, if at all, that there shall be in force with respect to said defendant a certificate of public convenience and necessity or other appropriate authorization issued by the Interstate Commerce Commission authorizing said defendant to engage in such operations.