Public Utilities Commission
No. 6371

AUCLAIR TRANSPORTATION, INC.

v.

STATE OF NEW HAMPSHIRE

May 31, 1973

*Sheehan, Phinney, Bass & Green* and *Robert E. Dastin* and *Williams, Shrigley, Ryan & MacRae* of Massachusetts (*Mr. Paul F. Ryan* orally) for petitioner, Auclair Transportation, Inc.

*Warren B. Rudman,* attorney general, *Roger G. Burlingame,* attorney, (*Mr. Edward A. Haffer,* attorney, orally) for petitionee, New Hampshire Public Utilities Commission.

GRIFFITH, J. Appeal by petition of Auclair Transportation, Inc. from Orders 10,460 and 10,461 of the New Hampshire Public Utilities Commission issued on November 30, 1971. RSA 541:6, 7. Order 10,460 grants U.S.I. Air Freight Service, Inc. authority "to engage in the carriage of property by motor vehicle as an irregular route common carrier as follows: Transportation of property between points and places in New Hampshire and airports served by commercial airlines transporting general commodities which have a prior or subsequent transportation by air; . . ." Order 10,461 authorizes identical trucking activity as a contract carrier rather than as a common carrier. In its request for a rehearing before the commission which was denied on December 23, 1971, and in this court, Auclair Transportation claims that the authorities granted by the State commission are invalid because they impermissibly regulate interstate commerce contrary to the Constitution and laws of the United States.

The standard of review governing appeals from administrative proceedings is prescribed by statute. Commission orders or decisions "shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13; *Peterborough Savings Bank v. King,* 103 N.H. 206, 168 A.2d 116 (1961).

The commission has power to grant common carrier certificates in accordance with "the present or future public convenience and necessity" and contract carrier permits where consistent with "the public interest". RSA 375-B:1, 5, 7 (Supp. 1972); *Household Goods Carriers v. Ouellette,* 107 N.H. 199, 219 A.2d 699 (1966); *Vautier v. State,* 112 N.H. 193, 291 A.2d 612 (1972). The report of the commission states that the orders do not exceed the commission's intrastate jurisdiction as defined by RSA ch. 375-B (Supp. 1972) because the orders are so drawn as to authorize transportation of property only between points and places in this State and airports also located in New Hampshire. The State argues further in support of the commission's orders that U.S.I. Air Freight does not propose to operate its business in interstate commerce.

However, according to the application for the trucking

certificate and permit, the testimony at the hearing before the commission, the commissioners' report, and the language of the orders under review, the authority sought and received by U.S.I. Air Freight is not limited to the carriage of intrastate shipments. The company seeks to perform pickup and delivery service for air freight either immediately arriving from or departing to points outside the State via New Hampshire airports. The report of the commission recites that "Schedules are arranged to have the air shipments in Boston between 6:00 p.m. and 9:00 p.m. for delivery the following day to Pacific Coast cities. To do this, the transportation from the New Hampshire point might be to Grenier Field in Manchester, to the Keene Dillant Hopkins Airport, or, if necessary, transportation by truck to Logan International Airport for forwarding if connections are not available from Manchester or Keene, or when adverse flying conditions prevent air operations." There is also evidence that all of the contemplated air freight is understood by the shippers to have destinations outside the State where consignment took place whether the shipment is departing New Hampshire or arriving from another State.

Since the time of *The Daniel Ball,* 77 U.S. (10 Wall.) 557, 565, 19 L. Ed. 999, 1002 (1871), and *Coe v. Errol,* 62 N.H. 303, 313 (1882), *aff'd,* 116 U.S. 517, 29 L. Ed. 715, 6 S. Ct. 475 (1885), courts have applied the criteria of continuity of movement in transit and the intent of the shipper as to the destination of his freight to distinguish, as we must here, between interstate and intrastate commerce. This proposed motor transportation, although conducted solely within one State, is interstate commerce because it connects with the same or other means of transport to form a continuous movement in interstate commerce. *United States v. Yellow Cab Co.,* 332 U.S. 218, 225, 91 L. Ed. 2010, 2017, 67 S. Ct. 1560, 1564 (1947).

The record also shows that the commission's finding of present or future public convenience and necessity is based upon its economic assessment of the adequacy of existing transportation facilities to perform a service in interstate commerce. The issuance of the certificate and permit therefore primarily reflects an effort to regulate competition. Article

I, section 8, of the Federal Constitution states that, "The Congress shall have power . . . to regulate commerce . . . among the several States . . . ." This provision grants Congress exclusive power to regulate competition between persons engaged in interstate commerce. *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 6 L. Ed. 23 (1824). Congress may authorize the States to regulate where it otherwise would be found beyond their power to do so. *In re Rahrer,* 140 U.S. 545, 35 L. Ed. 572, 11 S. Ct. 865 (1891); *Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 90 L. Ed. 1342, 66 S. Ct. 1142 (1946). But in the absence of such federal authorization, a State public utilities commission has no constitutional power to permit or prohibit interstate carriage by motor freight carrier on grounds primarily related to competition and not highway safety and conservation. *Buck v. Kuykendall,* 267 U.S. 302, 69 L. Ed. 623, 45 S. Ct. 324 (1924); *Bradley v. Public Util. Comm'n,* 289 U.S. 92, 77 L. Ed. 1053, 53 S. Ct. 577 (1933); *Fry Roofing Co. v. Wood,* 344 U.S. 157, 97 L. Ed. 168, 73 S. Ct. 204 (1952); *State Corp. Comm'n v. Bartlett & Co., Grain,* 338 F.2d 495 (10th Cir. 1964).

The State argues, in the event this court rules the proposed transport activity to be interstate commerce, that the commission is nevertheless empowered to regulate it without restriction because Congress has authorized such regulation by State agencies. It is true that Congress has exempted "motor transportation of property incidental to transportation by aircraft" from the requirement of obtaining an Interstate Commerce Commission certificate of public convenience and necessity, and instead permitted the States to regulate by issuing such certificates. Interstate Commerce Act § 203 (b) (7a); 49 U.S.C. § 303 (b) (7a). The Interstate Commerce Commission has ruled, however, that under this provision exempt service which may be subject to state regulation is limited to that bona fide pickup, delivery, or transfer service provided within the particular community (consisting of a core city and its environs generally within a twenty-five mile radius) served by a given airport. *Hazel Kenny,* 61 M.C.C. 587 (1953); *Motor Transportation of Property,* 95 M.C.C. 71 (1964), *codified,* 49 C.F.R. 1047.40. *See generally* Note, *Regulation of Air Freight Pickup and Delivery,* 76 Yale L.J. 405 (1966). This administra-

tive interpretation has been judicially enforced. *Zantop Air Transp. v. United States,* 272 F. Supp. 265 (E.D. Mich. 1967); *I.C.C. v. Howard,* 342 F. Supp. 1112 (W.D. Mich. 1972); *Air Dispatch Inc. v. United States,* 237 F. Supp. 450 (E.D. Pa.), *aff'd,* 381 U.S. 412, 14 L. Ed. 2d 693, 85 S. Ct. 1576 (1964). Issuance of the certificate and permit to U.S.I. Air Freight exceeds the power granted to the commission because such action authorizes pickup and delivery of property between points and places throughout New Hampshire and in airports anywhere in this State. Certificates of public convenience and necessity for transportation activities beyond the scope of the exemptions provided in the Interstate Commerce Act may be issued only by the Interstate Commerce Commission and not by any State regulatory body. *Zantop Air Transp. v. United States supra; I.C.C. v. Howard supra.*

*Orders vacated; remanded.*

All concurred.