Harr, Secretary of Banking, Appellant, *v.*
Boucher et al.
Harr, Secretary of Banking, Appellant, *v.* Evans.
Harr, Secretary of Banking, Appellant, *v.* Black.

Argued May 1, 1940.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*Horace M. Barba,* with him *J. Wayne Tomb, Philip P. Sharkey, John W. Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*Philip N. Shettig,* with him *Thomas A. Swope* and *Evans & Evans,* for appellees.

OPINION BY STADTFELD, J., October 7, 1940:

The Secretary of Banking, on September 26, 1932, took possession of the Dixonville Deposit Bank and on October 13, 1932, determined to liquidate the same in accordance with the provisions of the Banking Act of 1923.

On May 15, 1936, the Secretary of Banking, as Receiver of the Dixonville Deposit Bank, caused to be instituted, in the Court of Common Pleas of Cambria County, five separate suits in assumpsit against the defendants. The pleadings comprise the statements of claim and affidavits of defense raising questions of law.

In each case, the plaintiff is Luther A. Harr, Secretary of Banking of the Commonwealth of Pennsylvania, Receiver of the Dixonville Deposit Bank. The defendants, I. A. Boucher, Charles Evans, Harry S. Boucher, Ella Boucher Black and Irvan Boucher, Jr., are shareholders in the Dixonville Deposit Bank.

The statements of claim are identical in each case except as to the amount claimed. Each avers that defendant was the owner of shares of stock of the bank; that an examination of the affairs thereof by the Receiver reveals that its assets are insufficient to pay creditors in full; that the Receiver, on or about March 20, 1934, determined to enforce the individual liability of the stockholders and levied on each defendant an assess-

ment equal to the par value of the shares held, pursuant to the provisions of the Act of May 13, 1876, P. L. 161, the Banking Code of 1923, and the Banking Code of 1933.

The affidavits of defense filed are likewise identical and aver that the Act of May 13, 1876, P. L. 161, contains no notice in its title of the double liability provisions and therefore the action is not supported by effective legislation, and also aver that the Act is unconstitutional as being special or class legislation, in violation of the Constitution of Pennsylvania, and the provisions of the Federal Constitution relating to the denial of equal protection of the law.

In the court below, these cases were consolidated for argument and were heard on August 17, 1937, before the court en banc, all judges sitting. On March 21, 1938, the final order and decree of the court below was entered, sustaining the affidavits of defense raising questions of law pursuant to an opinion by McCann, P. J. and McKenrick, J. These appeals followed.

Appellant has filed separate assignments of error and separate records in each case on appeal. The assignments of error are, in each case, identical.

These five cases on appeal are companion cases to those reported in Volume 335 of the Pennsylvania Supreme Court Reports, commencing at page 1 thereof, with the case of *William D. Gordon, Secretary, etc. v. Biesinger et al.* Those cases, it will be noted, were commenced by filing a bill in equity, and the Supreme Court finally determined that the Secretary of Banking had mistaken his remedy and that jurisdiction in equity did not lie. Said cases, however, were also consolidated for argument, in the court below, with the cases here on appeal.

At the argument before the Supreme Court on January 3, 1939, that court raised additional questions and requested the filing of supplemental briefs. Such questions having been thus raised, counsel for appellant

here have embraced them in their briefs and have covered such questions in the printed argument. The appeals will be disposed of in one opinion.

The Act of Assembly, the constitutionality of which is in issue, is that of May 13, 1876, P. L. 161, the title to which reads as follows: "An Act for the incorporation and regulation of banks of discount and deposit".

*1.* The first question for the determination of this court is whether such title gives sufficient notice of that part of Section 5 of said Act, which provides for the imposition of double liability upon the stockholders of the plaintiff bank in receivership. The part under consideration is as follows: "The shareholders of any corporation formed under this act, shall be individually responsible, equally and ratably, but not one for the other, for all contracts, debts, and engagements of such corporations to the amount of their stock therein, at the par value thereof, in addition to the par value of such shares."

That provision of the Constitution of Pennsylvania, which appellee claims and the court below holds to be offended, is Article III, Section 3, which reads: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

From the numerous decisions of our Supreme Court involving the consideration of the present question, certain well-defined rules have been evolved.

In *Commonwealth v. Stofchek,* 322 Pa. 513, (1936), 185 A. 840, former Chief Justice KEPHART discusses the present constitutional provision in a very thorough and comprehensive manner. We quote therefrom, at p. 517: "The real purpose of section 3, of article III, must be considered in answering the question raised by appellant. The provision was not intended to exercise a pedantic tyranny over the grammatical efforts of legislators, nor to place them between the horns of a

constructional dilemma, namely, that the title of an act must be so general or so particularized as to include all of its subject-matter, and yet not so general as to give no indication of its purpose, nor so particular as to inferentially exclude from its scope any items inadvertently omitted. ......".

In footnote 2 to that case, it is said, "This provision of the Constitution of 1874 was adopted without debate. It is derived from the Second Amendment of 1864, and was patterned after similar sections in the constitutions of other states. Buckalew, who took an active part in the constitutional convention, says in his book on the Constitution, at page 68: 'The objects had in view in the adoption of this section and in the adoption of the Amendment of 1864 which it re-enacts, were to prevent "log-rolling" and fraud, trickery, or surprise in legislation. Every measure is to stand upon its own merits without borrowing strength from another, and the members of each House, and still more the public, are to have notice by its very title of the contents or nature of a bill. The construction of the section, therefore, must be such as will promote the attainment of these objects, and the words must not be weakened by nice refinements or distinctions, or wrested from their plain and natural import.'

"The first case decided construing this section was *Blood v. Mercelliott,* 53 Pa. 391. Judge Reed interpreted it by reference to the decisions of the courts of New Jersey, Iowa, Indiana, Kentucky, Maryland and New York, and found that its primary object was to prevent the passage of omnibus bills, a practice which was as prevalent in other states as in this Commonwealth." See also *Provident Life and Trust Co. v. Hammond,* 230 Pa. 407, 414, 79 A. 628.

The following are the provisions of Section 5: First: The capital cannot be less than fifty thousand dollars, nor can the shares have a par value of less than fifty

dollars each; Second: the shares are personal property and shall, upon transfer, carry all rights and liabilities of prior holders; Third: no change shall be made in the articles by which existing rights, remedies or securities shall be impaired; Fourth: the shareholders shall be liable to creditors to an amount equal to the par value of their holdings, in addition to the par value of the shares.

These are conditions of incorporation and regulation imposed by the legislature for the protection of persons who may deposit their money in such institutions, as well as for those who might invest in the shares thereof; and this section is only one of a number of sections which impose other conditions of regulation and incorporation.

It will scarcely be contended that the protection of depositors of the bank, as well as investors in the shares of stock therein are not properly the subject matter of *regulation*. The act, as a whole, deals solely with the subject of the title to the bill, that is, the incorporation and regulation of this particular kind of banking institution, banks of discount and deposit. Section 5 tells at a glance the rights and liabilities of any person who may be interested. It plainly states the conditions and limitations placed upon the corporation and its stockholders as to the capital stock in which they may be interested.

The court below based its conclusion upon the narrow premise that when a prospective stockholder picks up a copy of the act and sees the word "incorporation", he would be justified in assuming that nothing in the body of the act would affect his liability as a stockholder, because in all other acts, including the Corporation Act of 1874 (April 29, 1874, P. L. 73), the liability was limited solely to the amount of the investment. It assumed that the Act of 1876 created a brand new type of liability than theretofore existed in the law of corpora-

tions. On the matter of the double liability imposed by the Act of 1876, reference to a few Acts of Assembly of general and special legislation prior thereto, shows, however, that this was not a new and strange departure. [1] In authorizing the formation of banking companies by general and special acts, the legislatures have held liable the stockholders of such institutions beyond their original investment long prior to 1876, and the rights and liabilities of such stockholders were considered a subject germane and appropriate to legislation for the "incorporation" and "regulation" of banks. When, in 1876, the legislature undertook to deal with the rights and liabilities of stockholders of banks of

---

[1] The Act of March 28, 1808, P. L. 185, 4 Sm. L. 536, entitled: "An Act relating to the association of individuals for the purpose of banking," imposed a penal liability on all of such individuals for the debts and engagements of the association. (Considered in *Myers v. Irwin,* 2 S. & R. 368).

Act of April 26, 1844, P. L. 419, entitled: "An Act to extend the charter of the Commercial Bank of Pennsylvania," Section 4 of which imposed a double liability on stockholders of all banks.

Act of April 16, 1850, P. L. 477, entitled: "An Act regulating banks", by Section 32 of which stockholders are doubly liable under certain circumstances.

Act of March 11, 1872, P. L. 324, entitled: "An Act to incorporate the Odd Fellows' Savings Bank", imposing double liability by Section 9.

Act of April 10, 1873, P. L. 674, entitled: "An Act to incorporate the Miners' Savings Bank, to be located at Summitt Hill, Carbon County", by Section 13 of which double liability was imposed on stockholders.

Act of May 11, 1874, P. L. 135, entitled: "An Act fixing the liability of stockholders of banks and banking companies and other banking institutions in this commonwealth." (discussed at considerable length in *Gordon v. Winneberger,* 310 Pa. 362, 367, 165 A. 408).

The opinion of Judge STERN (now Mr. Justice STERN), in the case of *Gordon v. Winneberger,* 16 D. & C. 505, sets forth in the appended notes further examples of special acts imposing additional liability.

discount and deposit, it had a well-defined pattern from which to fashion the garment of the future. The sufficiency of the title to the Act of 1876, supra, must be judged in the light of legislation existing at the time of the passage (See *Kolesar v. Slovak Evangelical Union*, 122 Pa. Superior Ct. 318, 322, 186 A. 302), and measured by this standard, was broad enough to put upon inquiry those affected thereby.

The court below in its opinion, relies on but one case, *Commonwealth v. Hazen*, 207 Pa. 52, 56 A. 263, to support its decision. The title to the act there in question was: "An Act to incorporate the Blooming Grove Park Association". There, one Hazen trespassed upon a game preserve, established by the corporation formed under that Act; he was convicted and his conviction reversed by the Supreme Court. While the Act permitted the creation of a well protected private preserve for wealthy stockholders, the court held that anyone reading the title to the Act had reason to assume the word "park" meant a place of public recreation in accordance with the common understanding of the word, and held the title to be insufficient to support the penal provisions of the Act. In attempting to apply the reasoning of the Hazen case to the Banking Act of 1876, the court below entirely overlooked the word "regulation" in the title now before the court, for, by the Act itself and the title thereto, not only were banks of discount and deposit to be "incorporated", but they were to be "regulated". No matter how the word "park" may mean a public place, the word "corporation", in the light of then existing legislation, could not mean some kind of legal entity in which the liability of the members was limited solely to their investment.

A casual examination of the Corporation Act of April 29, 1874, P. L. 73, shows that it came into existence as the direct result of the prohibitions of the Constitution and the mandates of the Constitutional Convention.

The title reads, "An Act to provide for the incorporation and regulation of certain corporations." Many are the sections thereof conferring powers on one class of corporations and not on others, and such differentiations have been sustained by our courts; for example: *Reeves et al. v. Phila. Sub. Water Co.,* 287 Pa. 376, 135 A. 362, where the power of eminent domain, conferred on some corporations and not on others, was held sufficiently covered by the title.

The closest analogy is found in Section 14 of the said Corporation Act of 1874, which, inter alia, provides that stockholders shall be directly liable to wage earners for labor done in behalf of the corporation, irrespective of whether they have paid the full amount of their subscriptions for their shares of stock. And this provision has been retained in the "Business Corporation Law", Act of May 5, 1933, P. L. 364, (15 PS §2852).

Thus, with titles identical in form, both the general Corporation Act of 1874 and the General Banking Act of 1876 impose a liability on shareholders beyond the amounts invested. Neither imposes a direct liability, but both, in effect, say that if the assets are insufficient to meet the demands of creditors, the stockholders must make additional payments, in the one case to all creditors, and in the other to a special class of creditors. This provision of the Corporation Act was considered in *Lane's Appeal,* 105 Pa. 49.

If, therefore, the Corporation Act of 1874 be held constitutional and its title held sufficient to cover its multiple and varied provisions for incorporating and regulating business corporations (and the courts often have so held), it is most difficult to see why the Banking Act of 1876 should be held unconstitutional for lack of sufficiency of title in respect of the provisions of Section 5 thereof, when the titles to both Acts are so alike.

One of the most frequently cited cases on the subject of sufficiency of titles is *Sugar Notch Borough,* 192 Pa.

349, 43 A. 985. In dealing with general titles, the court there said, p. 352: "The title of the Act of April 3, 1851, P. L. 320, is 'An Act regulating boroughs'. Nothing more general and comprehensive on that subject could have been devised. It included the entire range of borough affairs so far as they were within legislative control. When, therefore, the Act of June 11, 1879, P. L. 150, was entitled 'A supplement to an act for the regulation of boroughs,' it was so far as the title was concerned as broad as the original act. It comprehended everything relating to boroughs that was or could be the subject of legislative action. The Act of June 1, 1887, P. L. 285, is entitled, 'A further supplement to an act, approved June 11, 1879, entitled "A supplement to an act for the regulation of boroughs,"' etc. If the title had stopped here it would have been beyond question, for it would have been as broad as that of the original act and of the first supplement. It would have included the whole subject of boroughs, and nothing germane to any aspect of that subject, would have been beyond the limits of the title . . . . . . A reader of the title, as already said, finding it a supplement to an Act 'regulating boroughs', would be warned that the entire subject of boroughs might be included."

Our appellate courts consistently have held that a title to an Act of Assembly is sufficient when it reasonably covers the subject matter of the text of the Act. The added liability imposed upon stockholders of banks was not a new type of liability, resulting in a tremendous wrenching of the existing law of corporations. On the contrary, its insertion in the General Banking Act followed the pattern of not only a long list of special acts dealing with banks, but as well, of the general Corporation Act of 1874. Consequently, this provision of section 5, being but a part of the *regulating* provisions of that section, and of the Act, is germane

and appropriate to the objects of the Act, viz: the incorporation and *regulation* of banks.[2]

2. The appellees contend that the Act of 1876 in imposing double liability is special class legislation, in violation of Article III, Section 7 of the Constitution of Pennsylvania and denies the equal protection of the laws, in violation of Section I of the XIV Amendment to the United States Constitution.

(a). Appellees base their contention on the ground that the Act of 1876 affects banks of discount and deposit, and does not affect trust companies, which are *now* so similar (especially as treated under the new Banking Code of 1933, Section 614).

The change that has come about has *not* been a change in the *banks of deposit and discount,* but has been a gradual enlargement of the powers of *trust companies.* The former are as they have always been, but the modern trust company, which is a corporation under the aforesaid general Corporation Act of 1874, is greatly changed. It was formed under that Act in the class providing for insuring titles to real estate. By subsequent acts the powers of these corporations were enlarged until the Act of May 9, 1923, P. L. 173, provided that every trust company and bank was authorized to discount paper and to retain the interest in advance. The discounting of paper had formerly been the most distinguishing feature of banks of discount and deposit. In all of the enabling statutes governing trust companies between that of the Act of 1874 and that of 1923, there is no mention made of imposing upon them the liability imposed upon stockholders of banks of discount and deposit; nor had the legislature at any time seen fit to remove from banks of discount and deposit

---

[2] See opinion of LARRABEE, P. J., in *Beckman, Sec'y of Banking v. Lansberry,* 36 D. & C. 175, where the court arrived at the same conclusion upon this question, as well as on others discussed in this opinion.

the liability which had been imposed upon the stockholders of the latter class. However unfair the restrictions of the Constitution after the May Act of 1923 and prior to the Banking Code of 1933 may seem, because of the similarity in powers between trust companies and banks of discount and deposit, it nevertheless is true that in 1876, there was no similarity at all between title insurance companies, (i. e. trust companies) and banks of discount and deposit, and the great essential distinction did not disappear until passage of the May Act of 1923, enlarging the powers of trust companies.

It will scarcely be contended that in 1876 there did not exist a real and substantial difference between banks of discount and deposit and trust companies, nor could such an argument have been made prior to the Act of 1923 cited.

Article III, Section 7, of the State Constitution, which prohibits the passing of legislation granting special or exclusive privileges or immunities to any corporation or individual, does not forbid classification of objects for the purposes of legislation if the classification be not arbitrary nor based on illusory distinctions. In this connection see *Commonwealth v. McDermott*, 296 Pa. 299, 145 A. 858, where the court through FRAZER, J., said at p. 305: "We said in *Com. v. Grossman*, 248 Pa. 11, 15, 'We have sustained classification as the proper exercise of legislative power, and held that it is a legislative question with which the courts will not interfere, if made in good faith and based on genuine and substantial distinction of the subjects classified. . . . . . .' ".

*Young v. Department of Public Instruction*, 105 Pa. Superior Ct. 153, 160 A. 151, where the court (quoting from *Seabolt v. Commissioners of Northumberland County*, 187 Pa. 318, 41 A. 22), stated, at p. 158: " 'Legislation for a class distinguished from a general subject is not special, but general, and classification is a legis-

lative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. ......' ".

The question of whether the enlargement of the powers of trust companies by subsequent legislation has destroyed the distinction theretofore existing has been considered in a very comprehensive opinion by Mr. Justice LINN, in *Gordon, Secretary of Banking v. Winneberger*, 310 Pa. 362, 165 A. 408. The syllabus in that case is in part as follows: "The exercise by such trust company of the powers conferred by the Act of May 9, 1923, P. L. 173, including the discounting of commercial paper, does not operate to transfer such trust companies from the class of title insurance companies, formed under the general Corporation Act of 1874, to the class to which 'banking institutions' belong, nor destroy the immunity of stockholders thereof from personal liability created by section 24 of the general Corporation Act of April 29, 1874, P. L. 73.

"Trust companies incorporated under the Act of April 29, 1874, P. L. 73, and its supplements, are not transferred into the class of banking corporations governed by the General Banking Act of May 13, 1876, P. L. 161, by availing themselves of the unconditional enabling legislation of the Act of May 9, 1923, P. L. 173, but remain in the class in which they were incorporated."

Quoting from said opinion at p. 370: "It is clear that in the general acts providing, on the one hand, for the formation of corporations with the powers specified in section 2, clause 9 and section 29 of the general corporation act, and supplements, and, on the other hand, for banks of discount and deposit under the Act of 1876, the legislature kept separate and apart the classes of corporations to be formed under each. Article XVI, section 11, of the Constitution, required that

banking corporations be kept in a separate class. It provided: 'No corporate body to possess bank and discounting privileges shall be created or organized in pursuance of any law without three months previous public notice, at the place of the intended location, of the intention to apply for such privileges, in such manner as shall be prescribed by law, nor shall a charter for such privilege be granted for a longer period than twenty years.' That section 11 was amended in 1920, is immaterial in this case.

"In our decisions referring to the subject, we have necessarily observed and adhered to the classification so established. The separation has been maintained with all its implications although the corporations receive deposits of money, and (in the last case) also discounted paper. In the *Prudential Trust Co.'s Assignment*, 223 Pa. 409, 413, we held that trust companies, incorporated under the same provision of the general incorporation act under which the Susquehanna Title & Trust Company was incorporated, 'and deriving their privileges and powers from the Act of 1889 (supra), and other supplementary statutes, are neither banks of issue nor of discount and deposit, within the meaning of the law, and therefore the act relied on as giving a preference to bank depositors, are not authority for the proposition that the same preference must be given to depositors in a title and trust company incorporated for a different purpose and being denied by the express language of the statute the right to engage in the business of banking.' ......

"Unless, therefore, such trust companies can be transferred from the class of title insurance companies, formed under the Corporation Act of 1874, to 'the class to which banking institutions belong', the immunity created by section 24, supra, cannot be displaced by the claim of enlarged liability imposed by section 5. If such change in classification, with the resulting burden,

should be made, it must be made by the legislature, not by the court. If the change had been intended by the statutes granting additional powers to companies formed under the Corporation Act of 1874, the legislature would have used appropriate words to declare the intention; in the absence of such declaration, we must conclude that the change was not intended."

Article III, Section 7, of the State Constitution provides: "The General Assembly shall not *pass* any local or special law: ...... Granting to any corporation, association or individual any special or exclusive privilege or immunity ......". (Italics supplied).

In 1876 the distinction existing between banks of deposit and title insurance companies was undoubtedly genuine, substantial and real, was made in good faith, was neither artificial nor irrelevant and therefore the *passage* of the Act of 1876 did not offend nor violate Article III, Section 7 of the Constitution of Pennsylvania.

(b). Does the Act of 1876 offend against the Fourteenth Amendment of the Constitution of the United States?

All of the foregoing in relation to the Banking Act of 1876 not being special and class legislation in reference to Article III, Section 7, of the Pennsylvania Constitution of 1874, applies equally as well to the Federal Constitution, Amendment XIV, Section 1. Further, there exists a decided case strongly in point: *State v. Darrah*, 152 Mo. 522. In that case a provision of the State Constitution provides: "It shall be a crime, the nature and punishment of which shall be prescribed by law, for any president, director, manager, cashier or other officer of any banking institution, to assent to the reception of deposits, or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent, or in failing circumstances." Section 3581, Revised Statutes 1889, was

passed in pursuance of this constitutional mandate and applied to "any president, director, manager, cashier or other officer of any banking institution, or the owner, agent or manager of any private bank or banking institution." The defendant, president of the Kansas City Safe Deposit & Savings Bank, was indicted for violation of the statute and convicted. On appeal it was contended that the section of the statute in question was repugnant to the 14th amendment to the Constitution of the United States, forbidding any state to "deny to any person within its jurisdiction the equal protection of the laws", inasmuch as the president, directors, managers, cashiers or other officers of *trust companies* are exempted from its operation.

The Supreme Court of Missouri, sustaining the validity of the section of the act in question, stated, (pp. 537, 538) "The language of the provision is comprehensive of a whole class. It exempts no one of that class. It applies to every president, director, manager, cashier or other officer of every banking institution in the State. By it all persons of that class are treated alike under similar circumstances and conditions. The classification is a natural and reasonable one, and the class, from the peculiar relation it sustains to the public, whose property the law is designed to protect, is a proper subject of such legislation. In fact, the defendant's contention seems to concede that this provision, and the act passed in obedience to it, has no inherent vice, but originally was, and continued to be, valid legislation until the passage of the Act designated in the Revised Statutes of 1889, as Article XI of chapter 42, and entitled 'Trust Companies'.

"This Act was first passed and approved March 20, 1885, so that according to this contention, the provision of the State Constitution and the Act passed in obedience to it, in question, which up to that time were not obnoxious to the Federal Constitution; by virtue of

this enactment at once came under the ban of the fourteenth amendment and ceased to be valid law; in view of the fact, that this court held in *State v. Reid,* 125 Mo. 43, that the officers of a trust company are not included within the provisions of section 3581. ......

"In support of this remarkable contention, we have been favored with a forcible argument by the learned and able counsel for the defendant, tending to show that these trust companies are banking institutions, and that their officers are conducting the same kind of business under like circumstances, and in similar conditions with the officers of the banking institutions of the State. The force of the argument is appreciated, and conceding for the sake of the argument that the proposition may have been demonstrated, yet the validity of the provision of the State Constitution and of the Act passed in obedience thereto is in no way affected by the conclusion, the only effect of which would be to bring these officers of trust companies within the same general terms of the constitutional provision, and of the Act, that includes the defendant and the officers of every other banking institution in the State. While this argument based upon the amendment to the Federal Constitution may impugn the conclusions reached in the Kelsey (89 Mo. 623) and Reid (supra) cases, when viewed in the light of that amendment, it does not touch the validity of the provision of the State Constitution or that of the Act passed in obedience thereto and in the terms thereof."

Because of striking similarity which the facts, questions and arguments involved in case cited, bear to those arising in the instant case, we have quoted extensively from the opinion of the court in the Missouri case.

As to the point raised that the Act of 1876 is now in violation of both Federal and State Constitutions because the valid distinction no longer exists, it is suffi-

cient here to say that if an Act was constitutional when passed, no passage of time, no series of events could render it an unconstitutional enactment at a later date. To hold otherwise would be to destroy that known certainty of the law which is every man's safety and would render it impossible to ever determine, once and for all, the constitutionality of a legislative enactment; for should it be declared constitutional by the courts in one year, by the next, or even sooner, it would again be open to attack, and the state of the law would become unknown, unstable and chaotic.

We are of the opinion that the section complained of is not in violation of Amendment XIV, Section 1, of the Constitution of the United States.

We will, as briefly as possible, answer the additional questions submitted for consideration.

(a). Was the Act of May 13, 1876, repealed by implication by subsequent legislation empowering title insurance companies to carry on the business of banks of discount and deposit?

It should be noted in this connection that should a "title insurance company" (or, in point of fact, should any domestic corporation whatsoever) desire to avail itself of the rights and privileges of the Act of 1876— of course, together with the obligations and liabilities imposed thereby—it is enabled to do so by the 32d Section of that Act. This section reads as follows: "32. That any corporation now in existence, chartered under any of the laws of this state, making application to come under any of the provisions of this act, shall do so by coming under all of the provisions of this act and shall reorganize the said corporation to conform with this act."

This section clearly shows the intention of the legislature that any corporation, whether it be a company formed under the general Corporation Act of 1874, Section 29, or under any other Section of that Act, or

under any other Act, could carry on a banking business by complying with the provisions of Section 32. The functional change of title insurance companies could neither subject them to, nor allow them to avail themselves of, either the obligations and liabilities or the rights and privileges granted by any provision of the said Act. This could only be done by bringing themselves under the Act pursuant to the method prescribed by Section 32 thereof.

Nor could these functional growths of themselves work an implied repeal of the Act of 1876. This could only be done by an enactment at a later date by the legislature of a statute inconsistent and irreconcilable with the Act of 1876, or by one clearly manifesting an intention but lacking the express words so to repeal.

(b). Does the Act of May 3, 1909, P. L. 412, in reference to the double liability of stockholders, constitute a reenactment by the Legislature of the 5th Section of the Act of 1876?

The Act of 1909, consisted of but one section. In that section, it cited verbatim the 5th section of the Act of 1876 for amendment, and then proceeded to recite that section as amended in full, the only change being as recited in the title to the Act "changing the minimum capitalization required in certain cases", to-wit, in towns of less than five thousand inhabitants. All other provisions remained exactly as in the original section including the double liability of stockholders. This is most surely an indication of the legislative intent to the effect that no act passed between May 13, 1876, the date of passage of the banking act in question, and May 3, 1909, had repealed either expressly or impliedly the Act of 1876 and especially Section 5 thereof.

If, under any construction, it could possibly be held that Section 5 of the Act of 1876 had somehow been repealed after its passage, either expressly or impliedly, the Act of 1909 would constitute a positive re-enactment

of its provisions (as amended in reference to minimum capitalization requirements only) which would in effect invalidate any repeal prior to the date of passage of the Act of 1909. See *Langhorne Manor Boro. v. Clayton,* 129 Pa. Superior Ct. 557, 196 A. 584.

(c). Did the Act of May 9, 1923, P. L. 173, of itself repeal by implication the Act of 1876? The Act of 1923 could not impliedly repeal the Act of 1876, especially as respects Section 5 thereof. The former Act reads in its entirety as follows: "An Act extending and enlarging the powers and rights of trust companies and banks organized and existing under the laws of the Commonwealth of Pennsylvania. Section 1. Be it enacted, etc., That every trust company and bank organized and incorporated under the laws of the Commonwealth of Pennsylvania is hereby authorized and empowered to discount, buy, sell, negotiate, and assign promissory notes, drafts, bills of exchange, trade and bank acceptances, bonds, and other evidences of debt, and to receive and retain in advance interest on loans and discounts made. Section 2. All acts or parts of acts inconsistent with this act be, and the same are hereby repealed."

The Act of 1923, by Section 2 thereof, did not expressly repeal the Act of 1876, Section 5, since nothing in the Act of 1923 deals with the liability of stockholders; nor did it expressly repeal Section 7 of the Act of 1876 which gave to "banks of discount and deposit" the same rights given to them and to "trust companies" by the Act of 1923. This reiteration of powers once given could in no wise be deemed an inconsistency. Further it should be noted that the Act of 1923 both in its title and in the body of the Act itself still recognizes a distinction between "banks" and "trust companies".

It has been held in a long line of cases in the Federal Courts and in the courts of this Commonwealth that repeals by implication are not favored: In re *Aspinwall's Estate,* 90 F. 675, 33 C. C. A. 217; *Farmers &*

*Mechanics Nat. Bank of Phila. v. U. S.,* 11 F. (2d) 348; *Shinn v. Commonwealth,* 3 Grant (Pa.) 205; *Somerset & Stoystown Road,* 74 Pa. 61. In the case last cited, it was said in the course of this opinion by Mr. Justice SHARSWOOD at p. 62: "The repeal of statutes by implication is certainly not favored. Where there are two affirmative statutes on the same subject, there must be a clear inconsistency or repugnancy between them in order that the later ones shall produce this result: *Street v. The Commonwealth,* 6 W. & S. 209; *Bank v. The Commonwealth,* 10 Barr 448; *Brown v. The County Commissioners,* 9 Harris 37; *Opdyke's Appeal,* 13 Wright 373." Repeals by implication are not favored, and will not be indulged unless it is manifest that the legislature so intended: *Jackson v. Penna. R. R. Co.,* 228 Pa. 566, 77 A. 905. The doctrine that implied repeals are not favored has been adopted by the United States Supreme Court in denying certiorari (262 U. S. 748) in the case of *Bookbinder v. U. S.,* (C. C. A. Pa.) 287 F. 790. And the same doctrine has been restated in recent cases by the Supreme Court of Pennsylvania in *Commonwealth Trust Co. et al. v. Allegheny Cemetery,* 324 Pa. 78, 187 A. 506; *Ferguson's Estate,* 325 Pa. 34, 189 A. 289.

That the May Act of 1923, extending and enlarging the powers and rights of trust companies and banks, could not possibly have impliedly repealed the Act of 1876 is most conclusively shown by comparing it with the Banking Act of June 15, 1923, P. L. 809. The enlarging act was passed by the legislature and approved by the Governor on May 9, 1923, while the Banking Act was passed by the legislature and approved by the Governor on the 15th day of June, 1923. Both acts were passed by the same session of the same legislature and approved by the same Governor. The later Act provided in Section 37 for the "Enforcement of Individual Liability of Stockholders". It would be absurd to presume that the same legislature at the same session

on May 9th passed an act indicating an intent to repeal Section 5 of the Act of 1876 and thirty-seven days later passed an Act expressly providing for the enforcement of the individual liability of stockholders prescribed by the same section of the Act of 1876.

There is no basis for an inference that the legislature intended by implication the repeal of the Act of 1876 through the enactment of the Act of 1923. Moreover, it is apparent that the latter Act was not a general or exclusive act governing the subject of banking business. We are therefore of the opinion that the Act of 1923 did not by implication or otherwise repeal any part of the Act of 1876, especially not Section 5 thereof, imposing double liability upon stockholders of banks of discount and deposit.

*(d)*. Does not the Banking Code (Act of May 15, 1933, P. L. 624), Section 614, constitute a recognition by the Legislature of the existence of the 5th Section of the Act of 1876, so as to defeat any suggestion of implied repeal?

Section 614 of the Act of 1933 as amended by the Act of April 24, 1935, P. L. 56, (7 PS §819-614), reads as follows: "B. As to deposits in, and claims outstanding against, banks, bank and trust companies, or trust companies, upon the effective date of this act, *the liability of common shareholders shall be as heretofore provided by law* until terminated in accordance with the provisions of this section. As to any deposit made, or claim arising, after the effective date of this act, common shareholders *now subject to statutory liability* shall be liable to the extent of the percentage of the par value of their stock by which the unimpaired surplus of the bank, the bank and trust company, or the trust company falls short of one hundred per centum of its common capital. If, at the effective date of this act, the unimpaired surplus of any such bank, bank and trust company or trust company is, or any time thereafter

becomes, equal to the aggregate par value of its common capital, the liability of common shareholders for deposits and other claims against such bank, bank and trust company, or trust company shall cease and determine. Shareholders of banks, bank and trust companies, or trust companies incorporated under this act, shall not be subject to any liability to the depositors or other creditors thereof." (Italics supplied).

As Section 5 of the Act of 1876 had never been amended save by the Act of 1909, supra, and had never been amended at all as respects the double liability of stockholders between May 23, 1876, the date of its passage, and May 15, 1933, the date of the passage of the Act of 1933, and had in fact been re-enacted by the Act of 1909 referred to, this reservation of the liability of shareholders was an indication of the clear intent of the legislature that such a liability should continue until the effective date of the banking Act of 1933. And as such an expression of clear intent so to continue the liability as then existent, which as to banks of discount and deposit could be found only in the Act of 1876, Section 5, it amounted to a re-enactment of that statute.

This Section (614) of the Banking Act of 1933 was itself amended by the Act of 1935, P. L. 56, which insofar as it affected the clause quoted, merely qualified the word "shareholder" as used therein, as "common shareholders", so that as late as April 25, 1935, (being the effective date of the Act of 1935), the legislature recognized the statutory liability of shareholders of banks of discount and deposit as existent in law.

In the face of such clear indications of legislative intent in 1933, and again in 1935, amounting to a re-enactment of the statutory liability of shareholders of banks of discount and deposit and the positive complete re-enactment of the liability imposed by the Act of 1876, by the Act of 1909 referred, to, it is impossible to

find that there had ever been a repeal, either express or implied, of the statutory liability imposed by Section 5 of the Act of 1876 prior to the qualifications imposed by the Act of 1933 on deposits and claims arising after the effective date of the Act and its abolition as to institutions incorporated thereunder.

It should be noted that the section of the Banking Act cited performed a dual purpose: the first sentence thereof by retention of the rights to proceed under the earlier statutes absolutely negatived any implied repeal; the later sentences thereof remedied the admitted unfairness of the present situation existing between stockholders of banks and stockholders of trust companies, discussed herein. This section eliminates double liability entirely with respect to institutions incorporated under this act. The increased capital and surplus requirements are substitutes for such liability.

With respect to institutions in existence upon the effective date of this act, it cannot, of course, constitutionally impose any liability, if none was theretofore provided for by law. With respect to institutions in existence upon the effective date of this act, upon the shares of which the law imposed liability, this act provides that (a) such liability shall continue as to all deposits made, or claims arising, prior to the effective date of this act, until the surplus of such institution becomes equal to the aggregate par value of its capital, at which time the liability will cease; and (b) such liability shall continue as to deposits made, or claims arising, after the effective date of this act to the extent of the percentage of the par value of the shares by which the surplus of an institution falls short of one hundred per cent of its capital. Of course the shareholders of any institution which, upon the effective date of this act, has a surplus equal to one hundred percent of the aggregate par value of its capital, are relieved of liability on their shares.

All additional questions raised by appellees and relevant to the scope of the issues here involved have been treated in the course of the opinion. Attention should, however, be called to another question which has not been raised or discussed by either side in the court below, or in this appeal, and which involves the right of appellees to raise the question of the constitutionality of the Act of 1876.

Appellees became the owners of their stock either by original subscription or by assignment from subscribers, and assumed voluntarily all the obligations imposed on them as owners. The liability sought to be enforced is contractual: *Aultman's Appeal,* 98 Pa. 505; *Blair v. Kingston Mfg. Co.,* 64 Pa. Superior Ct. 506; *Squire v. Fridenberg,* 126 Pa. Superior Ct. 508, 191 A. 631. The corporation, in which the appellees herein are shareholders, was incorporated under the Act of 1876. The appellees now seek to raise the question of the constitutionality of that Act with respect to the operation of Section 5 thereof, imposing double liability. That Section is closely related and clearly germane to the subject of the Act of 1876 governing the incorporation and regulation of banks of discount and deposit.

In *Freeland v. Pennsylvania Central Insurance Company,* 94 Pa. 504, in an action by a mutual insurance company for assessments upon premium notes given by a policy holder, the defendant contended that the contract should not be enforced against him because the act conferring upon the company the power to insure was unconstitutional; it was held in an opinion by Mr. Justice Green, that the defendant as a member of the company, could not make this defense. See to same effect *Maxwell, Bank Commissioner of Arkansas v. Thompson et al.,* 186 N. Y. Supplement 208, 195 App. Div. 616. Motion to dismiss appeal denied in 231 N. Y. 542 and affirmed in 232 N. Y. 619. That case held that stockholders of a bank, which continued to do business

after the passage of an act providing that a bank must bring itself within the provisions of the act or cease to do business, will not be permitted to deny the bank's existence or legal validity so as to avoid assessments under such statute on the bank's becoming insolvent, since parties must take the consequences of the position they assume.

The assignments of error are sustained, the judgment of the court below in each case is reversed and a procedendo awarded.