Merrimack,
No. 4906.

PETERBOROUGH SAVINGS BANK & a.

*v.*

HARRISON S. KING, *Commissioner.*

Argued February 8, 1961.

Decided March 7, 1961.

*Kenneth A. Brighton* and *McLane, Carleton, Graf, Greene & Brown* (*Mr. Greene* orally), for the plaintiffs.

*Gardner C. Turner*, Attorney General, and *Frederic T. Greenhalge*, Assistant Attorney General (*Mr. Greenhalge* orally), for the defendant.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the New Hampshire Association of Savings Banks as *amicus curiae*.

BLANDIN, J.  The single question before us is whether the plaintiff savings banks, making loans on the credit of two-name paper which satisfy the legal requirements of RSA 387:5 IV (supp), may also take as additional security non-legal collateral without invalidating the loan.  The issue is one of statutory interpretation of RSA 387:2 and 5 IV (supp), which in establishing the standards for making loans in the above category provide in part as follows: "2.  REQUIREMENTS.  Savings banks . . . shall make investment . . . of their funds only in the . . . loans authorized by this chapter . . . . "
"5.  COLLATERAL AND UNSECURED LOANS.  The following described loans are legal investments:  . . . IV.  UNSECURED.  Notes with two or more signers, or one or more endorsers, or notes of noncorporate makers whose net worth is not less than two hundred and fifty thousand dollars.  No savings bank shall invest under this paragraph, except in notes with two or more signers, or one or more endorsers, unless its guaranty fund is full and unimpaired and the total value of its assets . . . exceeds . . . its deposits by at least ten per cent . . . . "

The defendant argues that unsecured loans in the nature of notes with two or more signers are illegal if collateral is taken which is not specifically authorized by the statute.  Unquestionably the State has broad latitude in the exercise of its police powers to regulate savings banks, with the principal objective of securing the safety of depositors. *Opinion of the Justices*, 102 N. H. 189, 190.

The vital necessity that this be done is too obvious to require delineation, and the reasons have been expressed so often and at such length that repetition here is not required. *Opinion of the Justices*, 102 N. H. 189, 190, and authorities cited, *supra*. We will agree with the defendant that the Legislature, within the bounds of reason, can pass all manner of laws to safeguard depositors (*Opinion of the Justices, supra,* 190) and that the Commissioner has ample powers to make rules reasonably necessary to implement such laws. RSA 383:9 and 384:6.

In addition to the statutory requirements set up by the Legislature, it has also been long established that the directors of savings banks stand in the position of trustees as to their depositors and must use due care in the management of the bank's affairs, including, of course, its loan policies. *Mechanicks Nat. Bank* v. *D'Amours,* 100 N. H. 461,. 468; 9 C. J. S., Banks and Banking, s. 971. In the light of these indisputable principles, it would appear that when directors, in the exercise of business acumen and caution, supplement a loan made in accordance with the statutory requirements (*s.* 5 IV, *supra*) with additional collateral security as a further measure of protection for the depositors, they are fulfilling the precise purpose which the Legislature sought to accomplish by chapter 387 as well as exercising the due care required by common law. *Mechanicks Nat. Bank* v. *D'Amours, supra.* Legislation establishing fixed minimum standards, as does the above statute, for the amount and nature of the security to be held, is sometimes overtaken by events in these rapidly changing times. It is not unlikely that instances may occur, due to altered conditions, when legal security for a loan, sufficient when taken, may become inadequate. In such a situation, additional non-legal collateral security may well offer a cushion to off set what would otherwise be a loss to the depositors. Indisputably, the statute requires that loans under *s.* 5 IV, *supra,* shall be made on the credit of the signers of the instrument, but the record in this case is barren of evidence of violation of this requirement.

The rule advocated by the defendant means in substance that the Legislature has determined that a lesser margin of safety for depositors is legal, while a greater margin is not. In other words, if a bank takes a certain minimum amount of the sort of security included in RSA 387:5 IV, it acts properly provided the loan is prudently made, but if it takes a two-name note and additional non-legal collateral, it acts illegally. This seems an illogical result.

While the courts cannot and do not attempt to compete with the Legislature in matters of policy (*Chronicle &c. Pub. Co.* v. *Attorney General*, 94 N. H. 148, 151), yet whenever possible a statute will be so construed as not to lead to an unfortunate or an absurd result. *In re Moore*, 99 N. H. 209, 211. Taking into account the practical realities of the situation, we believe it not only possible, but in accord with our law and what seems to be its basic philosophy, to so construe the statute as to permit extra collateral not listed in the statute, in addition to the minimum requirements as established therein, to be taken to secure a loan.

While it may be argued that the question of the interpretation advocated by the defendant here was not squarely raised, which may be some indication it was not thought to be sound by the Attorney General, in the case of *Quinn* v. *Company*, 82 N. H. 392, yet many of the arguments advanced by the defendant were presented there. See 386 Briefs and Cases, *pp.* 277, 321. In that case, in addition to legal security of the required amount, non-legal collateral was pledged to secure a loan. The court stated flatly: "The statute was designed to promote sound investments, and no reason appears for construing it in a way to include the lesser security and exclude the greater." *Supra*, 394. "That [the bonds] are also secured by the additional pledge of large amounts of other property, does not make them less valuable or render them ineligible as bank investments." *Supra*, 395. It is this precise principle approved by the court above which the defendants would deny here.

The defendant relies upon such Massachusetts decisions as *Medford Trust Co.* v. *McKnight*, 292 Mass. 1, for the proposition that RSA 387:5 IV is a statute of mandatory limitation and that taking additional non-authorized security renders the loan illegal. In this case, as in others cited by the defendant, the statutes, facts and policies differ from ours, and they are therefore not controlling.

The defendant urges that the use of the word "Unsecured" as a heading for subsection IV, *supra,* is indicative of legislative intent to prevent the taking of security on such loans as are there described. We do not believe this is so. There has been no substantial substantive change in the law since 1921. Throughout its history, the emphasis of the Legislature seems to have been to set minimum rather than inflexible standards (RSA 387:3, 4, 18) and not to arbitrarily forbid banks to take more security when good judgment and due care seem to require it. In the Commissioner's report of 1925 on the revision of the statutes, which was adopted in P. L.,

1926 as *c.* 262, *s.* 3 VII, the Commissioners expressly stated that their main objective in setting up the sub-headings as they did was not to revise the law but to "facilitate the search for particular provisions." Commissioner's Report, 1925, Introduction, *p.* iii. In the light of the history of this matter, including the *Quinn* case, we cannot attribute the significance to the sub-heading which the defendant would do.

In conclusion, it appears to us that the fundamental objective of RSA 387:5 IV was to safeguard depositors. When the Legislature desired to prohibit the taking of collateral security, it said so in unmistakable terms. RSA 384:14. No such language appears in section 5 IV, *supra*. The main purpose of the law is served by the long-established practice of the plaintiff banks. No substantial arguments of policy, as bearing upon the legislative intent, seem to militate against it, and it follows that under RSA 387:5 IV (supp), the plaintiffs may make loans on the credit of two-name paper, taking in addition to the minimum security as set forth in the statute collateral non-legal security.

Since it appears that the defendant's interpretation of the statute was erroneous as a matter of law, his decision must be set aside. RSA 541:13. The first question is answered in the affirmative.

*Remanded.*

LAMPRON, J., did not sit; the others concurred.