**OLD STONE BANK, on its own behalf and as Trustee of Old Stone Bank Thrift Incentive Plan and Trust Agreement, Plaintiff,**

v.

**Julius C. MICHAELSON, Thomas J. Caldarone, Jr., and Anthony J. Solomon, in their capacities as members of the Rhode Island Board of Bank Incorporation, Defendants.**

Civ. A. No. 77–0356.

United States District Court,
D. Rhode Island.

Oct. 27, 1977.

Edward J. Regan, Robert W. Edwards, Jr., Providence, R. I., for plaintiff.

Allen P. Rubine, Asst. Atty. Gen., Providence, R. I., for defendants.

## OPINION

FRANCIS J. BOYLE, District Judge.

This action is brought by Old Stone Bank, as Plaintiff, in its corporate capacity and in its capacity as Trustee of Old Stone Bank Thrift Incentive Plan and Trust Agreement (hereinafter the Plan) against Defendants in their capacities as members of the Rhode Island Board of Bank Incorporation (hereinafter the Board). Plaintiff seeks a declaratory judgment and injunctive relief, contending that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (hereinafter ERISA), has preempted the authority of Defendant Board granted by General Laws of Rhode Island, 1956 (1968 Reenactment) § 19–5–17 (hereinafter R.I.G.L. § 19–5–17), with respect to Plaintiff's employee retirement plan. In its Complaint, Plaintiff contends in part, that the effect of the Board's decision would be to prevent Plaintiff from implementing amendments to the Plan which are mandated by ERISA. For the reasons stated herein, Plaintiff has failed to establish at this time the dire consequences it claims will eventuate, and its prayers for relief are denied.

The Court finds the facts to be as follows: Prior to June, 1974, Plaintiff, a mutual savings bank without shareholders, adopted an employee pension benefit plan consisting of three (3) investment funds:

1) the Savings Account Fund consisting of investments in time deposits in federally insured banks and savings and loan associations;

2) the Bond Fund consisting of investments in bonds, notes, debentures, mortgages, and preferred stock;

3) the Equity Fund consisting of investments in common and preferred stocks.

The Plan permitted participating employees to designate in multiples of ten (10) percent, the allocation of their individual Plan accounts into any of the above three (3) options.

In June, 1974, Plaintiff converted to a trust company, the stock of which is wholly owned by Old Stone Corporation. Old Stone Corporation is a publicly held corporation whose stock is traded in the over-the-counter market. In September, 1974, Congress enacted ERISA establishing minimum federal standards in an effort to curb funding and disclosure abuses of employee pension and welfare benefit plans, and to protect the interests of participants and their beneficiaries in such plans.

In order to comply with the provisions of ERISA, substantial changes were required to be made in the Plan, effective January 1, 1976. Plaintiff amended its Plan to comply with all the mandatory provisions of ERISA and further amended the Plan to include a fourth investment fund permitted, but not required, under ERISA. The fourth option consisted of an Old Stone Corporation Stock Fund which permitted the Plan to invest in "qualifying employee securities."[1] ERISA § 407(b), 29 U.S.C. § 1107(b); ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2). Such securities are stock issued by the employer or an affiliate of the employer whose employees are covered under the Plan.[2]

Plaintiff's Board of Directors authorized the inclusion of this fourth option permitting investments in Old Stone Corporation common stock in the amended Plan, and formally approved the amended Plan in its entirety in February, 1976. In addition, the Plan was submitted to and approved by the shareholders of Old Stone Corporation pursuant to the Securities Exchange Act of 1934.

On April 30, 1976, pursuant to R.I.G.L. § 19–5–17, Plaintiff first submitted its amended Plan to the Defendant Board for its approval. Thereafter, the Internal Revenue Service (hereinafter IRS) required further amendments in order that the Plan might retain its tax-qualified status and comply with ERISA. Further, the Board requested a written statement from Plaintiff that the Plan complied with all applicable laws. Time elapsed before the Board could pass upon the final Plan, including the more recent tax-qualifying amendments approved by IRS. The final Plan, after approval by Plaintiff's Board of Directors on December 23, 1976, was resubmitted to the Board for its approval on December 27, 1976.

On March 11, 1977, the Board issued its decision denying the Bank's petition for approval, apparently because the Plan had been implemented before it was submitted for approval.[3] The Board ruled that the Plaintiff must return to its previous Plan, but that Plaintiff could resubmit the request for amendment under R.I.G.L. § 19–5–17 if it so desired. Plaintiff chose not to resubmit its Plan. Thereupon, Plaintiff filed this action raising the constitutional issue of preemption. It argued that the Board, in view of the sweeping scope of ERISA, had at all times lacked jurisdiction over the matter.

The Court concludes the law to be as follows: ERISA is a comprehensive federal statute which provides substantive regulatory provisions governing the administration of employee benefit plans. A review of the legislative history of ERISA establishes that Congress devoted considerable time and attention to the question of preemption. Originally, both House and Sen-

---

1. This option allows the wholly-owned subsidiary trust company to hold stock of its parent as trustee although it may not vote the stock. Clearly, this will provide a market for the parent Old Stone Corporation's publicly traded stock.

2. Under this option, a qualifying employee may select the percentage of pay, from two (2) to twelve (12) percent, which the employee

wishes to contribute to the Plan. The Bank will also contribute, out of its earnings, a matching amount, not to exceed five (5) percent. Should the bank have no earnings, it will make no contribution.

3. Without attempting to fix blame for the delay, in the absence of some deliberate violation, this would hardly seem an adequate reason to deny at least prospective approval.

ate each favored some form of preemption limited to state regulation of areas directly covered by the Bill. However, the final adopted version of the preemption clause, which was developed in the conference committee, contains broad sweeping language. ERISA § 514(a), 29 U.S.C. § 1144(a) provides:

> Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b). This section shall take effect on January 1, 1975.

This section, which summarily preempts state regulation of ERISA-covered employee benefit plans, is limited and qualified by the "savings" clause of § 514(b)(2)(A). By means of the "savings" clause, Congress explicitly excluded from federal preemption any state law which regulated banking in apparent recognition of the traditional state interest in the regulation of banks. ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A) states:

> Except as provided in subparagraph (B), nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

Congress further elaborated on the above exception in the "deemer" clause, ERISA § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B):

> Neither an employee benefit plan described in section 4(a), which is not exempt under section 4(b) (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

The analysis to be applied in this action is based upon *Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir. 1977). In that Opinion, the First Circuit affirmed the judgment of the District Court for the District of New Hampshire which held that the Commissioner of the Department of Insurance would not be precluded by ERISA from regulating the content of group insurance policies purchased by an employee benefit plan. The Commissioner, pursuant to Chapter 57 of the Laws of 1976, N.H.Rev. Stat.Ann. §§ 415:18–a, 419:5–a and 420:5–a (1976), acted to require the issuers of group health insurance policies to provide coverage for the treatment of mental illness and emotional disorders, coverage which ERISA did not require. Plaintiffs, administrators of various health and welfare funds which provide benefits chiefly through the purchase of group health insurance, sought to restrain the enforcement of Chapter 57 on the basis of ERISA § 514(a), i.e., that Chapter 57 *related* to employee benefit plans and therefore the provisions of ERISA superseded Chapter 57 as it applied to them.

The First Circuit rejected this simplistic approach to ERISA's preemption provisions. It recognized that Chapter 57 is a state law which indirectly related to employee benefit plans and is, therefore, subject to preemption. However, the court stated that preemption does not necessarily follow.

The court indicated that a proper reading of ERISA can only be achieved by construing § 514(a) in conjunction with ERISA's "deemer" clause, § 514(b)(2)(B), in light of congressional intent. Since Chapter 57 is a state law regulating the content of group insurance policies, that Chapter falls within the ambit of the "savings" clause as a law regulating insurance. ERISA explicitly preserves the effect of any state law which regulates insurance. In addition, a plain reading of the "deemer" clause does not diminish the effect of the exception provided in § 514(b)(2)(A). The court held that the "deemer" clause is a safeguard to prevent a state from categorizing or labeling a plan as "an insurance company or other insurer . . . or . . . engaged in the business of insurance", so as to allow the state to apply its insurance laws under

the exception provided in § 514(b)(2)(A). The court stated, however, that "the deemer provision [on its face] does not prohibit a state from indirectly affecting plans by regulating the contents of group insurance policies purchased by the plans." *Id.* at 78.

Applying the teaching of *Wadsworth* to the facts of this action, the "deemer" clause must be read in conjunction with the banking exception provided in § 514(b)(2)(A). The Defendant Board is not categorizing the Plan as a "bank . . . or . . . engaged in the business of . . . banking," in an attempt to regulate the Plan, its contents or its administration.

Rather, in the proper exercise of its legitimate statutory jurisdiction, the Board is seeking to regulate Old Stone Bank, a state-chartered bank subject to the provisions of Chapter 5 of Title 19, General Laws of Rhode Island, 1956 (1968 Reenactment). Chapter 5 governs the general powers of financial institutions in the State of Rhode Island. From a reading of the entire statute, it is evident that R.I.G.L. § 19–5–17, entitled "Retirement plans of other financial institutions," was intended by the legislature to be a provision regulating banking. *Hudson County National Bank v. Provident Institution for Savings in Jersey City*, 80 N.J.Super. 339, 193 A.2d 697 (1963); *Trugman v. Reichenstein*, 27 N.J. 280, 142 A.2d 618 (1958). The Board does not seek to regulate the Plan as a Retirement Plan. It seeks to regulate the Plaintiff Bank in its corporate capacity and in its capacity as Trustee of the Plan. For this reason, this Court concludes that the exception for banking provided by ERISA applies, and Old Stone Bank, in its corporate capacity and in its capacity as trustee, is subject to regulation in accord with the provisions of R.I.G.L. § 19–5–17.

■ It has long been recognized that a state may regulate banking to protect the public welfare in the exercise of its police power. *McShane v. Dingley*, 132 Me. 429, 172 A. 264 (1934); *Peterborough Savings Bank v. King*, 103 N.H. 206, 168 A.2d 116 (1961); *U. S. v. Farmers and Merchants Bank*, 397 F.Supp. 418 (D.C.Cal.1975).

■ The Defendant Board has a properly recognizable interest in overseeing certain activities of a state-chartered bank. The fact that those activities are prompted by an election to establish a plan subject to regulation by ERISA does not deprive the Board of its jurisdiction. Plaintiff intends to implement a fourth option in its Plan which involves the purchase of stock of Old Stone Corporation, of which Plaintiff is a wholly-owned subsidiary. The Board has traditionally been authorized to regulate the kinds of investments a bank may make, and no reason has been advanced why it cannot continue to do so in the interest of banking in Rhode Island.

■ Payments contributed by Old Stone Bank to the Plan could create a continuing market for the stock of the Bank's parent, Old Stone Corporation, as well as affect the operational expense of the Bank, and, conceivably could operate to bring about subtle or even drastic shifts in the control of the bank.[4] It is proper for the Board to examine and approve the action of Plaintiff in adopting a Plan before it becomes effective. As the court held in *Harr v. Boucher*, 142 Pa.Super. 114, 15 A.2d 699 (1940), the protection of depositors of a bank, as well as that of investors in the shares of bank stock, is a proper subject for statutory regulation.

■ Furthermore, the option at issue here is sanctioned, but not mandated by ERISA. Surely, Congress did not intend that a state could not protect the depositors or shareholders of its banks in accordance with its own regulations simply because the regulated activity somehow also involved the subject matter of employee benefit plans. That is the exact purpose to which the "savings" clause of ERISA is directed.

Defendant will prepare and present a form of Judgment in accord with this Opinion.

---

4. This Court expresses no opinion concerning the propriety of this practice. It must be said that no evidence has come to the attention of this Court of any such purpose.